**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LARGAN PRECISION CO., LTD.  ) | |
| No. 11, Jingke Rd.  ) | Case: 1:22-mc-00049 |
| Nantun Dist., Taichung 40852, Taiwan  ) | Assigned To : McFadden, Trevor N. |
| ) | Assign. Date : 05/10/2022 |
| *Movant*,  ) | Description: Misc (O-DECK) |
| ) | |
| v.  ) | Civil Action No. _____ |
| ) | |
| FISCH SIGLER, LLP,  ) | |
| 5301 Wisconsin Avenue NW, 4th Floor  ) | |
| Washington, D.C.  20015  ) | |
| ) | |
| *Respondent*.  ) | |

## <u>MOTION OF LARGAN PRECISION CO., LTD. TO STAY ARBITRATION</u>

Largan Precision Company, Ltd. ("Largan"), through undersigned counsel, files this motion to stay arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, D.C. Code § 16-4405, and Federal Rule of Civil Procedure 7(b).  *See Signature Technology Solutions v. Incapsulate, LLC*, 58 F.Supp.3d 72 (2014) (analyzing motion to stay arbitration pursuant to standard of Section 4 of the FAA).  As explained below, Respondent Fisch Sigler, LLP ("Fisch") cannot force Largan, its former client, to arbitrate Fisch's claim seeking a bonus payment from Largan.  Largan respectfully requests that the Court enter an Order quashing the Statement of Claim Fisch submitted to the D.C. Bar Attorney/Client Arbitration Board ("ACAB") and permanently staying any related arbitration proceeding.

1

After receiving almost $4.5 million in so-called "fixed fee" payments from Largan for an inconclusive patent case,[1] Fisch now seeks to further enrich itself by claiming a "success fee" of some $5.6 million.  By means of two sentences quietly added to the engagement letter near the end of negotiations over Largan's engagement of Fisch, Fisch sought to require its client to arbitrate before the ACAB—a secret proceeding in which Largan would have no right to discovery, would be prohibited from transcribing the proceedings, would possess only a very limited right to appeal, and for which its corporate witnesses and representative would have to travel half-a-world away from Largan's place of business to a venue without any connection to the litigation Fisch pursued on Lagan's behalf.  Fisch cannot force Largan to arbitrate this "success bonus" dispute because Fisch never sought—and Largan did not give—the informed consent necessary to form an agreement to arbitrate, as required by D.C. law, the D.C. Bar's own jurisprudence, and the ethics rules governing attorney-client arbitration provisions.  Moreover, given that the existence of a valid agreement to arbitrate is in dispute, this Court—not the ACAB—is the proper venue to determine whether an agreement to arbitrate exists.  *See* D.C. Code § 16-4406(b); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

In support of this motion, Largan states as follows:

## PARTIES AND JURISDICTION

1.     Movant Largan is a Taiwanese company headquartered in Nantun District, Taichung, Taiwan.  It is a manufacturer of smartphone camera lenses, and is traded on the Taiwan Stock Exchange.  It does not have any offices in the District of Columbia or in the United States.

---

[1]  The case, *Largan Precision Co. v. Ability Opto-Electronics Tech. Co.*, Case No. 3:20-cv-06607-JD (N.D. Cal. 2020), involved 4 patents and was settled before the claim construction hearing.

2.      Respondent Fisch is a law firm consisting of at least eight attorneys who are members of the D.C. Bar and other lawyers.  The firm is headquartered in Washington, D.C.

3.      This Court has jurisdiction under 28 U.S.C. § 1332.  Fisch is a limited liability partnership incorporated, and with its principal place of business, in the District of Columbia. Largan is a Taiwanese company with its principal place of business in Taiwan.  The amount in controversy exceeds $75,000, as Fisch is seeking a $5.6 million success fee in the claim it filed with the ACAB.

**FACTUAL BACKGROUND**

4.      In 2013, Largan filed suit in Taiwan against a Taiwanese company, Ability Opto-Electronics Technology Co., Ltd. ("AOET"), for misappropriation of Largan's trade secret.

5.      In 2019, while the Taiwanese litigation was still ongoing, Largan hired Fisch to file a patent infringement lawsuit in the United States against AOET and two other entities, which on Fisch's advice was filed in the United States District Court for the Eastern District of Texas. Largan and Fisch negotiated the terms of the engagement over the course of several weeks, and signed an Engagement Letter (attached as Exhibit 1) on July 24, 2019.

6.      The Engagement Letter sets forth that the "firm's compensation . . . shall be in the form of fixed fees and success bonuses."  Exhibit 1 at 1.  It then delineates a monthly fixed fee schedule for fees "incurred by the firm" for "expected tasks"—based on the typical schedule of trial in the Eastern District of Texas.  *Id.* at 1–3.  It then discusses the conditions for and details of a potential success bonus.  *Id.* at 3–4.

7.      Fisch billed Largan for work it did not perform.  For example, Fisch's fixed fee schedule charges for "depositions" in July 2020 and September 2020, and for a "tutorial" and hearing in July and August 2020.  Exhibit 1 at 2.  There was but a single deposition in the entire

case and neither the "tutorial" nor the associated hearing ever occurred.  *See generally* Joint Case Management Conference Statement, *Largan Precision Co. v. Ability Opto-Electronics Tech. Co.*, Case No. 3:20-cv-06607-JD (N.D. Cal. Jan. 7, 2021).  Nonetheless, Fisch billed Largan the fixed fee and provided no specific explanation as to what, if any, other work it may have performed.

8.      The Engagement Letter also includes two provisions that contemplate alternative dispute resolution.  One deals with disputes over the amount of a success bonus, and states that the parties will "mediate in California" if "good faith discussions" do not resolve the dispute.  *Id.* at 4. The other deals with disputes about fees and purportedly requires "mandatory arbitration" before the ACAB.  *Id.* at 5.

9.      Upon winning a large judgment in the Taiwanese litigation on January 28, 2021 and obtaining an order on February 22, 2021 from the Taiwanese authorities allowing Largan to collect an approximately $50 million judgment against AOET, AOET approached Largan on February 23, 2021 (the very next day) to settle all pending cases, including both the criminal and civil cases in Taiwan, as well as the pending U.S. litigation, in which AOET was one of the defendants.  Due to the result in Taiwan—with which Fisch had absolutely no role or involvement and which essentially froze all of AOET's liquid assets—there was no reason to continue the litigation in the United States, which had gone poorly, and continue to pay Fisch's fixed fees, which Fisch had continued to invoice despite significant procedural delays in the U.S. litigation. As a result, AOET negotiated settlements with Largan that resolved both the Taiwanese and U.S. lawsuits.  *See* Declaration of Chia-Wen Lee (attached as Exhibit 2).

10.     In its unjustified effort to collect a success bonus based on the resolution of a litigation in Taiwan in which it had no role—and despite achieving nothing resembling success from the meandering, inconclusive, yet very expensive litigation it had pursued for Largan against

AOET and others in Texas and, later, California—Fisch filed a claim with the ACAB on September 15, 2021, asking for a success bonus of $5.6 million, plus attorneys' fees and expenses. *See* Statement of Claim (attached as Exhibit 3).

11.     The ACAB is an atypical arbitration forum with unique characteristics not shared by other more commonly known arbitration fora. The D.C. Court of Appeals, in establishing rules for the D.C. Bar, promulgated a provision that requires any *attorney* who is a D.C. Bar member in matters with some connection to the District of Columbia to submit to arbitration before the ACAB if a client chooses to seek such an arbitration in a dispute over fees.  *See* Rule XIII of the Rules Governing the D.C. Bar.  The Court of Appeals never promulgated any rule that forced a client to agree against its wishes to arbitration before the ACAB at their counsel's demand.  Instead, as made plain in its legal ethics opinions, the D.C. Bar requires that if an attorney wants a client to agree to mandatory arbitration with the ACAB, the lawyer must obtain the client's "informed consent" for such agreement to be formed.  *See* D.C. Bar, Legal Ethics Op. 376 (2019); D.C. Rule of Professional Conduct 1.0(e) & cmts. [2], [3].  Indeed, the ACAB recognizes and has memorialized the informed consent requirement in its own rules.  *See* ACAB Rule 8(b)(iii) ("Further, the client must have been adequately informed of the scope and effect of a mandatory arbitration provision, consistent with D.C. Bar Legal Ethics Committee Opinion 376 (copy attached).").

12.     In correspondence with the ACAB's administrator regarding Fisch's demand that Largan arbitrate Fisch's claim seeking an unjustified "success bonus," Largan has repeatedly stated that it does not and has never agreed to arbitrate before the ACAB, that the ACAB lacks the authority to hear this dispute, and that Fisch never made any effort to obtain the informed consent necessary to form an agreement to arbitrate required by law.  In informing the ACAB administrator

that it would not now agree (and has never agreed) to arbitrate Fisch's claim, Largan provided substantial legal arguments, discussed below, why Fisch cannot force Largan to arbitrate Fisch's claims against it, and why the Court, and not the ACAB, must decide the gatekeeping question of arbitrability—whether an agreement to arbitrate exists.

13.     Nonetheless, on April 5, 2022, the Associate Director for the ACAB, in a letter to Fisch and undersigned counsel, stated that Largan's objection "is a question of fact that will be decided by an arbitrator," Exhibit 4 at 1, and then on April 28, 2022, informed Largan in an email that she was submitting the issue of arbitrability to an ACAB arbitration panel, Exhibit 5 at 1.

14.     Accordingly, Largan now files this motion to stay any arbitration before the ACAB.

## LEGAL ARGUMENT

15.     The issue to be decided on this motion is whether Fisch's dispute is subject to arbitration.  As a preliminary matter, governing precedent makes plain that only a court, and not an arbitration panel, can decide the threshold issue of whether a valid agreement to arbitrate exists, unless there is clear and unmistakable evidence that the parties agreed to have that question decided by the arbitrators.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  There is nothing here to suggest that the parties ever discussed, let alone agreed to, the ACAB deciding the specific issue of arbitrability.  Thus, it is for this Court to decide whether a valid agreement to arbitrate exists.  As explained below, Fisch's claim is not subject to an ACAB arbitration because Fisch failed to provide—and made no effort to seek—the informed consent from Largan required by law.

## I.   THE QUESTION OF ARBITRABILITY IS FOR THIS COURT TO DECIDE.

16.    Largan contends—and has repeatedly and consistently maintained—that that it did not agree to arbitrate before the ACAB (or anywhere else).  Stated otherwise, Largan disputes the *existence* or formation of a valid agreement to arbitrate—i.e., arbitrability.

17.    Arbitrability is a question for this Court, not for an arbitrator.  D.C. law makes clear that courts "shall decide whether an agreement to arbitrate exists."  D.C. Code § 16-4406(b) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.").  This is because "the arbitrator's authority derives from the consent of the parties," and thus permitting an arbitrator to decide arbitrability "where a proper objection to the arbitrator's authority has been lodged would vitiate the consent basis of statutory arbitration by permitting an arbitrator to clothe herself with actual authority, based on the agreement of the one party asserting the claim."  *Grad v. Wetherholt Galleries*, 660 A.2d 903, 908 (D.C. 1995); *accord Fac. Ass'n  v. Bd. of Trustees of Univ. of D.C.*, 257 A.3d 1026, 1031–32 (D.C. 2021) ("Because the arbitrator's authority derives from the consent of the parties, it is the court's responsibility to settle the basic contractual question of whether the parties are bound by a given arbitration clause.").

18.    The Supreme Court has held that:

[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of the dispute . . . .  Just as the arbitrability of the *merits* of a dispute depends on whether the parties agreed to arbitrate that dispute, so the question of 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.  Did the parties agree to submit the arbitrability question itself to arbitration?

*First Options*, 514 U.S. at 943 (second alteration in original) (citations omitted).  Because an arbitrator lacks any authority unless the parties have consented to such authority, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable

evidence that they did so." *First Options*, 514 U.S. at 944 (cleaned up); *accord Masurovsky v. Green*, 687 A.2d 198, 200 (D.C. 1996) (acknowledging the binding effect of *First Options*).  Thus, where the existence of a valid agreement to arbitrate is disputed, and the arbitration provision does not clearly and unmistakably submit the question of arbitrability to arbitration, the court decides the issue.  *Masurovsky*, 687 A.2d at 204 (citing *First Options*, 514 U.S. at 943).

19.     Here, there is no evidence that the parties agreed to submit the question of arbitrability itself to the ACAB.  The provision Fisch inserted late in negotiations with Largan over its engagement, and without any effort to obtain informed consent, does not discuss arbitrability at all, let alone "clear[ly] and unmistakabl[y]" submit that question to the ACAB.  It states, in full:

> In the event that a dispute arises relating to the firm's fees, the Client and the firm agree to mandatory arbitration before the Washington, D.C. Bar Attorney/Client Arbitration Board.  A copy of the D.C. Bar Attorney/Client Arbitration Board's rules is available from the staff of the D.C. Bar Attorney/Client Arbitration Board.

Exhibit 1 at 5–6.  The question of arbitrability is therefore properly before this Court.

20.     In a letter to the ACAB, Fisch argued that the question of arbitrability is properly before the ACAB because D.C. law requires that "[a]n arbitrator decide whether a condition precedent to arbitrability has been fulfilled."  D.C. Code § 16-4406(c).  But the dispute here involves no condition precedent.  Conditions precedent are requirements within *valid agreements* that must be fulfilled before the *duty to perform* on the valid agreement arises.  *See, e.g.*, *Wash. Properties, Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000); *Condition Precedent*, Black's Law Dictionary (11th ed. 2019) ("An act or event, other than a lapse of time, that must exist or occur before a duty to perform *something promised* arises.") (emphasis added).  Stated otherwise, an agreement indisputably exists, but one party need not perform the agreement if certain conditions precedent have not occurred.   For example, a valid agreement to arbitrate may include a provision that requires parties first to meet and confer or attempt to mediate a dispute before commencing

an arbitration.  A party asserting that such a condition precedent did not occur would not be challenging the existence of a valid agreement.  But here, Largan challenges the existence of a valid agreement to arbitrate, not that some condition precedent of such agreement was not met.

21.    The full text of Subsection (c) on which Fisch relies, and its placement within the Code provision, make this distinction clear.  Subsection (b) necessitates that a "court shall decide whether an agreement to arbitrate exists."  D.C. Code § 16-4406(b).  Immediately after that, subsection (c) states:  "An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract *containing a valid agreement to arbitrate is enforceable*." *Id.* § 16-4406(c) (emphasis added).  Subsection (c) thus applies only where a valid agreement to arbitrate exists, and gives the arbitrator the authority to decide whether any conditions precedent that might be contained in that valid agreement "have been fulfilled."  D.C. Code § 16-4406(c). But Subsection (b) and clearly controlling precedent from the Supreme Court and the courts of the District of Columbia leave to the Court the issue of whether there is any valid agreement to arbitrate.  Thus, the Court—and not the ACAB—must decide this threshold issue.

## II.  LARGAN DID NOT AGREE TO ARBITRATE DISPUTES BEFORE THE ACAB.

22.    Given that the question of arbitrability is properly before this Court, the Court must summarily decide whether the parties agreed to arbitrate the dispute at issue.  *See Signature Tech.*, 58 F.Supp.3d at 78; *see also* D.C. Code § 16-4407(b) ("On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue.").  Largan did not agree to arbitrate before the ACAB.

**A.  There Is No Valid Agreement To Arbitrate Before the ACAB Because Fisch Never Sought or Obtained Informed Consent.**

23.     Fisch has never argued—and could not argue—that it sought from Largan the informed consent required by law for a valid agreement to arbitrate.  Without informed consent, there is no agreement to arbitrate.

*1.  The Rules of Professional Conduct Require the Lawyer to Have a Discussion that "Fully Inform[s] [the Client] of the Scope and Effect of the Agreement."*

24.     D.C. law is clear that there is no valid agreement to arbitrate without informed consent.[2]  The D.C. Rules of Professional Conduct permit lawyers to enter agreements to arbitrate fee disputes only if the client so agrees prior to any such dispute and is "fully informed of the scope and effect of the agreement."  Ethics Op. 376 at 5; *see also* ACAB Rule 8(b)(iii).  The D.C. Bar ethics opinion addressing precisely this issue—"Mandatory Arbitration Provisions in Fee Agreements"—concluded that a client must be "fully informed of the extent and scope of [an arbitration] agreement."  *See* Ethics Op. 376 at 5.

25.     Fisch argued to the ACAB that the Rules requiring informed consent apply only to an unsophisticated, unrepresented client.  This is a patently incorrect reading of Ethics Opinion 376.  Fisch bases its misinterpretation of the law on the fact that the previously issued Ethics Opinion 211 required that a client must receive advice from independent counsel to enter a mandatory arbitration agreement, but, as Ethics Opinion 376 recognized, the addition of Comment 13 to Rule 1.8 changed the analysis.  *See* Ethics Op. 376 at 3 ("In light of Comment [13], . . . the more onerous requirements imposed by Opinion 211 are no longer required.").  Fisch, however,

---

[2]     "[W]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  *First Options*, 514 U.S. at 944; *Masurovsky*, 687 A.2d at 204 (citations and internal quotation marks omitted).

ignores that Opinion 376 explains that lawyers and clients can agree to arbitrate so long as the client is "fully informed of the scope and effect of the agreement." *Id.* at 5. Fisch's argument that removing the independent counsel review requirement somehow eliminated the requirement to obtain informed consent is without support in either the Committee's discussion or the D.C. Bar's own rules.

26.     When explaining what constitutes "fully informed," the Committee looked to the definition of "Informed Consent" in Rule 1.0(e), which requires that lawyers provide "adequate information and explanation about the material risks of and reasonably available alternatives to [a] proposed course of conduct." *Id.* Applying this to arbitration agreements, the Committee stated:

> The lawyer must provide a client with sufficient information about the differences between litigation in the courts and arbitration proceedings. As a general matter*, a discussion regarding at least the following differences* . . . is prudent: (1) the fees incurred; (2) the available discovery; (3) the right to a jury; and (4) the right to an appeal.

*Id.* at 6 (emphasis added). Although "the *scope* of this discussion depends on the level of sophistication of the client," a discussion must take place and "at least" include the topics noted.[3] *Id.*

### 2.     Fisch Did Not Discuss the Arbitration Provision with Largan or Fully Inform Largan of Its Scope and Effect.

27.     Here, Fisch had *no discussion* with Largan about the mandatory arbitration provision, let alone a discussion that met the requirements informed consent. The only mention of the arbitration provision occurred late in the parties' negotiations over the engagement, when

---

[3]     The D.C. Board of Governors agrees. As the Committee noted, the Board of Governors applied this requirement to ACAB proceedings by amending Rule 8 of the ACAB Rules to permit the ACAB to compel a client to arbitrate a fee dispute only if, among other procedural protections, "the client [was] adequately informed of the scope and effect of a mandatory arbitration provision, consistent with D.C. Bar Legal Ethics Committee Opinion 376." ACAB Rule 8(b)(iii); *see also* Ethics Op. 376 at 6 n.5.

Fisch emailed the provision to Largan as part of five paragraphs of purported boilerplate provisions it called "portions of the standard [engagement] agreement."  *See* Emails Between Fisch and Largan (attached as Exhibit 6) at 11–12 (July 12, 2019 email).  And although the communications in this email chain spanning from June 16 to July 25 reflect the parties' substantive discussion over numerous issues including Fisch's proposed fees, the scope of the representation, the specific patents at issue, Fisch's proposed venue for the litigation, and Largan's concerns about translating documents, nowhere in those 22 pages (or anywhere else) is there any discussion of the "scope and effect" of the arbitration provision.  *See generally id.*  Indeed, the prior versions of the engagement letter Fisch provided, which were subject to the parties' substantive discussions and marked up by Largan, did not contain any language about an ACAB arbitration.  *See* Engagement Proposals (attached as Exhibit 7).  Fisch simply dropped them into a final version as "portions of the standard agreement."

28.   In order to obtain the informed consent necessary to make any valid agreement to arbitrate, "[t]he lawyer must make reasonable efforts to ensure that the client . . . possesses information reasonably adequate to make an informed decision.  Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client . . . of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's . . . options and alternatives."  D.C. R. Prof. Conduct 1.0, cmt. [3].  But Fisch has never pointed (and could not point) to a single discussion or explanation it provided of the two-sentence arbitration provision it did not include in the proposed engagement letter until the final version.  Fisch's abdication of its obligation is made plain in the second sentence of the provision which simply states:  "A copy of

the D.C. Bar Attorney/Client Arbitration Board is available from the staff of the D.C. Bar Attorney/Client Arbitration Board."

29.     Fisch should have, but did not, discuss many things with Largan to meet the informed consent standard. First, Fisch should have explained that agreeing to the provision would require Largan's representatives to travel to Washington, D.C.—a jurisdiction with which Largan's *only* contact was hiring D.C.-based Fisch for its patent litigation that took place in Texas and California. Thus, mandatory ACAB arbitration imposes a substantial burden upon Largan and its officers and employees who reside in Taiwan, and who would incur significant expenses for flights and lodging that Fisch would not.[4]

30.     Second, the unconventional nature of ACAB arbitration underscores the importance of the requisite informed consent. Unlike litigation and traditional arbitral forums (*e.g.*, AAA, UNCITRAL, and JAMS), the ACAB does not provide a right to discovery, and any discovery is permitted entirely and only at the ACAB panel's discretion. *Compare* ACAB Rule 19(b), *with* AAA Commercial Arbitration Rule 22(b); UNCITRAL Arbitration Rules, Article 27(3); and JAMS Comprehensive Arbitration Rule 17. Moreover, the ACAB Rules provide that in any dispute with an amount in controversy above $10,000, the panel hearing the dispute will include at least one non-lawyer. *See* ACAB Rules 1, 13(b). As such, a client agreeing to such an arbitration should be informed that a subsequent fee dispute will be decided in part by someone who lacks formal legal training or experience.

---

[4]   Even a virtual hearing would present its own burdens. Undersigned counsel would either need to travel to Taiwan to represent Largan at the hearing or represent them 8,000 miles away through a virtual platform—the problems with which are amplified by the fact that Largan's representatives are not native English speakers, as well as the 12-hour time difference between D.C. and Taiwan.

31.    Third, and perhaps most critically, the ACAB specifically prohibits its hearings from being transcribed and its panels from providing written reasons for the final award.  ACAB Rule 19(m) ("Hearings are neither transcribed nor recorded by the ACAB.  Requests by a party to have the ACAB transcribe or record the hearing will be denied. The parties are prohibited from transcribing or recording the hearing using their own or third-party resources."); *id.* Rule 21 ("No opinion, setting out reasons, will be issued with the award.").   ACAB Rules such as these significantly disadvantage litigants like Largan, whose representatives are not native English speakers.  In a multi-day proceeding, as this would likely be, these individuals would need the chance to review their own testimony to see if they misspoke or if any non-English testimony was translated correctly, and also to review the testimony of the other parties to understand it and have effective assistance of counsel to address it.  In addition, the absence of a transcript or any reasoned final opinion would deny Largan a fair and complete review of the ACAB hearing on even the limited grounds permitted.   *See* D.C. Code § 16-4423 (specifying grounds for vacating an arbitration award, some of which would necessitate a transcript to prove); *C.R. Calderon Constr., Inc. v. Grunley Constr. Co.*, 257 A.3d 1046, 1056 n.8 (D.C. 2021) (refusing to consider arguments on appeal where "[t]here is no transcript of the proceedings to support these assertions").

32.    Fisch made no effort to ensure that its client was fully informed of the scope and effect of a mandatory provision requiring arbitration of any fee dispute with the ACAB in Washington, D.C.  Instead, it did the opposite:  It characterized the mandatory arbitration language as a "standard agreement" and buried it in five other paragraphs of "standard agreement" terms.  Exhibit 6 at 12.  Even the text of the arbitration provision itself, *see supra* p. 7, in no way addresses the significant differences between litigation and an ACAB arbitration.  Given the ACAB's significant variations from both litigation and more commonly used arbitration rules—variations

which were never disclosed or communicated to Largan—and the additional hardships they impose on Largan (but not Fisch), Fisch's failure to seek or obtain informed consent is legally insufficient and would unquestionably prejudice Largan.

33.    Accordingly, per the Rules of Professional Conduct, the parties did not form an agreement to arbitrate before the ACAB.[5]

**B.  Largan Did Not Agree to Arbitrate This Dispute Before the ACAB Because the Arbitration Clause is Limited to "Fees" not "Success Bonuses"**

34.    In addition to Fisch's failure to seek or obtain informed consent from Largan, another provision in the Engagement Letter further illustrates that, at the very least, Largan did not agree to arbitrate *this particular dispute* before the ACAB.  The Engagement Letter separately addresses Fisch's fixed fees and a possible success bonus.  For example, it states that "[t]he firm's *compensation* for this matter shall be in the form of *fixed fees* and *success bonuses*."  Exhibit 1 at 1 (emphases added).  It also notes that certain payment terms "apply to all amounts due, including fees, non-covered expenses, and success bonuses."  *Id.* at 3.  Throughout the letter, "success bonuses" and "fees" are distinct.[6]

35.    The Engagement Letter includes an alternative dispute resolution provision specifically for success bonuses, which states that the parties will "mediate in California" if "good

---

[5]    And per the ACAB Rules, the ACAB cannot compel Largan—a client—to arbitrate this dispute, which was filed by Fisch.  *See* Rule 8(b)(iii) (noting compliance with Ethics Op. 376 as a prerequisite for the ACAB to "compel a client to arbitrate a fee dispute filed by a lawyer").

[6]    The engagement letter is also inconsistent with the ethics rules.  Payment was in advance for the coming month's fees and deemed as "earned" on the first of the month.  Exhibit 1 at 3 ("Once a fixed fee is earned at the beginning of a new month, it is due in full, with no refunds or pro-rata reductions should the Litigation end in that month.").  But under Rule 1.5(a), flat fees are not earned until services are performed and should be kept in trust absent informed consent to the contrary, so as not to burden the client's right to discharge their attorney.  *In re Mance*, 980 A.2d 1196 (D.C. 2009).  The provisions for an 8% interest charge on past due amounts plus a $1,000 per week "administrative charge" violates Rule 1.5(a).

faith discussions" do not resolve a dispute over a success bonus. *Id.* at 4. Thus, even if Largan agreed to any form of alternative dispute resolution with respect to the dispute at issue here—i.e., the amount of any success bonus Fisch is owed—it merely agreed to attempt to resolve it through good faith discussions and mediation in California, which would not subject such dispute to mandatory arbitration before the ACAB. Simply put, Fisch can point to no language supporting the notion that the parties ever entered an agreement to arbitrate a *success bonus dispute* before the ACAB.

## PRAYER FOR RELIEF

36. Accordingly, because Fisch and Largan did not form an agreement to arbitrate, Fisch's claim to the ACAB is improper, and the arbitration proceeding should be permanently stayed.

37. No previous motion has been made for the relief requested here, nor has Largan been served a motion to compel arbitration.

**WHEREFORE**, for the foregoing reasons, Largan respectfully requests that this Court enter an Order quashing the Statement of Claim Fisch submitted to the ACAB, permanently staying the arbitration proceeding before the ACAB, and granting any other relief the Court may deem just and proper.

Date:  May 10, 2022                    Respectfully submitted,

_____

Thomas B. Mason, D.C. Bar No. 413345
Charles T. Kimmett, D.C. Bar No. 463920
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street, N.W., Eighth Floor
Washington, D.C. 20036
(202) 730-1300
tmason@hwglaw.com
ckimmett@hwglaw.com

*Counsel for Movant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on May 10, 2022, a copy of the foregoing was served by sending a copy via certified mail, return receipt requested, to the Respondent at the following address:

5301 Wisconsin Avenue NW
Fourth Floor
Washington, D.C.  20015

Thomas B. Mason