**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARGAN PRECISION CO., LTD.,

        Movant,

v.

FISCH SIGLER LLP,

        Respondent.

Civil Action No.: 1:22-mc-00049

---

**FISCH SIGLER'S MEMORANDUM IN OPPOSITION TO LARGAN'S
MOTION TO PERMANENTLY STAY ARBITRATION**

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  FACTUAL BACKGROUND .............................................................................. 3

A. Fisch Sigler LLP Is a D.C.-Based, Nationally Recognized IP Litigation Firm .................. 3

B. Largan Is One of Taiwan's Largest Companies and A Sophisticated Consumer of
     United States Legal Services ................................................................................ 3

C. The Parties' Negotiations of the Retention Agreement ....................................... 5

D. The Patent Infringement Action Succeeds ........................................................ 7

E. Largan Refuses to Pay Any Success Bonus and Fisch Sigler Invokes the Arbitration
     Provision ................................................................................................................ 9

III. ARGUMENT ................................................................................................... 11

A. The ACAB Should Decide Whether the Agreement Follows the ACAB's Rules ............ 11

B. The Arbitration Provision is Enforceable Because U.S.-Barred Independent Counsel
     Represented Largan During the Negotiations ................................................... 14

C. Largan Agreed to Have the ACAB Hear Any Disputes About the Success Bonus .......... 18

IV. CONCLUSION ................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*2200 M Street LLC v. Mackell*,
  940 A.2d 143 (D.C. 2007) ............................................................................. 19, 20

*Davis v. Winfield*,
  664 A.2d 836 (D.C. 1995) ..................................................................................... 11

*Emeronye v. CACI Intern., Inc.*,
  141 F. Supp. 2d 82 (D.D.C. 2001) ........................................................................ 11

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................... 13

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ........................................................................................... 12, 13

*Jahanbein v. The Ndidi Condominium Unit Owners Ass'n, Inc.*,
  85 A.3d 824 (D.C. 2014) ................................................................................. 19, 20

*Johansson v. Cent. Properties, LLC*,
  320 F. Supp. 3d 218 (D.D.C. 2018) ................................................................. 19, 20

*Largan Precision Co. Ltd. v. Ability Opto-Electronics Tech. Co., Ltd.*,
  No. 3:20-cv-06607 (N.D. Cal.) ............................................................................... 7

*Largan Precision Co. Ltd. v. Ability Opto-Electronics Tech. Co., Ltd.*,
  No. 4:19-cv-000696 (E.D. Tex.) ........................................................................... 17

*Largan Precision Co. Ltd. v. Fujinon Corp.*,
  No. 4:10-cv-01318 (N.D. Cal.) ......................................................................... 5, 17

*Largan Precision Co. Ltd. v. Genius Elec. Optical Co., Ltd.*,
  No. 3:13-cv-02502 (N.D. Cal.) ......................................................................... 5, 17

*Largan Precision Co. Ltd. v. Motorola Mobility, LLC*,
  No. 4:21-cv-09138 (N.D. Cal.) ......................................................................... 9, 17

*Largan Precision Co. Ltd. v. Samsung Elecs. Co., Ltd.*,
  No. 3:13-cv-02740 (S.D. Cal.) ......................................................................... 5, 17

*Masurovsky v. Green*,
  687 A.2d 198 (D.C. 1996) ..................................................................................... 13

*Menna v. Plymouth Rock Assur. Corp.*,
  987 A.2d 458 (D.C. 2010) ............................................................................... 12, 13

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................. 3

*Sig. Tech. Solutions v. Incapsulate LLC*,
   58 F. Supp. 3d 72 (D.D.C. 2014) ......................................................................... 11

*University of the District of Columbia Faculty Ass'n v. Board of Trustees of the University of the District of Columbia*,
   257 A.3d 1026 (D.C. 2021) ........................................................................... 12, 13

*Woodland Ltd. Partnership v. Wulff*,
   868 A.2d 860 (D.C. 2005) ............................................................................ 12, 13

*Woodroof v. Cunningham*,
   147 A.3d 777 (D.C. 2018) ................................................................................. 19

**Statutes**

D.C. Code § 16-4406(c) ......................................................................................... 12

 **Other Authorities**

D.C. Bar Ethics Opinion 211* ......................................................................... 14, 16

D.C. Bar Ethics Opinion 376* ..................................................................... 14, 15, 16

**Rules**

ACAB Rule 8* ................................................................................................. 11, 12

D.C. Rule of Prof. Conduct 1.0(e), Comment 2* ................................................ 15

I.      INTRODUCTION

Fisch Sigler and Largan agreed to share the risk and reward of a patent infringement case against two of Largan's chief competitors and HP, Inc. This resulted in the parties agreeing to a discounted fixed fee and a bonus if the litigation succeeded. The firm invested nearly two years in the litigation, and it succeeded. The firm secured licensing agreements and monetary compensation from both competitors, as well as a public apology from Largan's chief rival's CEO for infringing Largan's patents. But Largan has refused to pay any bonus to Fisch Sigler. The firm attempted for six months to resolve the issue with Largan, including asking Largan six times to engage in mediation, a process the parties' contract required as an initial step for resolving "any dispute over the amount of any success bonus." Largan declined all these entreaties. So, in September 2021, the firm sought the assistance of the parties' agreed-to forum for litigating any fee disputes, the D.C. Bar's Attorney-Client Arbitration Board. Through that arbitration, Fisch Sigler simply asks for its claim against Largan for non-payment of the $5.65-million bonus to be heard.

Largan doesn't want that to happen. Its instant collateral attack is only its latest attempt to block the firm from having its claim heard, following multiple requests from Largan to the ACAB to halt the arbitration. And its motion, like these prior defensive procedural maneuvers, is remarkable for what it doesn't provide: any alternative forum for Fisch Sigler to pursue Largan—which is based in Taiwan and maintains no U.S. offices—for its non-payment. Indeed, while Largan asks this Court to permanently stay the arbitration, it suggests no other appropriate forum, and hints that it'll seek to avoid jurisdiction based on its lack of physical presence in the United States.

But Largan raises no basis for this Court to nullify the parties' agreement to arbitrate before the ACAB. To be sure, Largan grounds its arguments on the claim that it's an unsophisticated, foreign company that was duped at the 11th-hour into agreeing to arbitrate. But Largan

omits that it's a multi-billion dollar company that has supplied lenses for every version of the iPhone. Largan also doesn't disclose that it frequently uses the U.S. federal court and patent system. Largan has initiated five patent infringement cases in U.S. district courts since 2010, suing the likes of Samsung and Motorola, and has obtained 943 U.S. patents during the last 20 years. And Largan omits that as part of its settlement of the underlying patent infringement case, AOET—one of the defendants and Largan's chief competitor—sold Largan 15.2% of its company at a 41.22% discount to further satisfy AOET's licensing fee. Largan also doesn't disclose that it was represented by a U.S.-barred and trained attorney throughout the negotiation with and representation by Fisch Sigler, and that its CEO, Dr. Adam Lin, was the only other Largan employee included on every email with the firm. And Largan also omits that this attorney received the proposed arbitration provision nearly two weeks before the contract's execution, and sent the firm eight emails during that time raising questions and proposed language for the agreement.

Largan's newfound complaints about Fisch Sigler's performance and the case outcome also provide no basis for discarding the arbitration agreement. And they're untrue, as Largan's actions outside this proceeding show. During the underlying litigation, Largan was so pleased with Fisch Sigler's performance that it retained the firm to represent Largan on additional matters, including defending Largan's patents at the Patent Office, representing Largan at the Federal Circuit, and investigating potential infringement of Largan's patents by others. And five months after the litigation concluded, Largan solicited Fisch Sigler for additional work on a potential new patent infringement action. These solicitations stopped, and Largan's smears against the firm began, only after Fisch Sigler sought to enforce its rights at the ACAB.

Allowing the arbitration to proceed here would serve the ACAB's purpose: providing a specifically-focused, efficient forum for DC bar members and their clients to resolve fee

disputes. Indeed, that's precisely why Fisch Sigler sought and received Largan's agreement to use the ACAB. And foreclosing Largan's collateral attack would also further the pronounced federal policy favoring the resolution of disputes through arbitration.[1] For all these reasons and those detailed more fully below, Fisch Sigler respectfully requests that this Court deny Largan's motion to permanently stay the arbitration and allow Fisch Sigler to have its claim for non-payment heard by the parties' agreed-to arbitrator.

## II.    FACTUAL BACKGROUND

### A.    Fisch Sigler LLP Is a D.C.-Based, Nationally Recognized IP Litigation Firm

A group of veteran intellectual property attorneys who had practiced together at Howrey LLP and Kaye Scholer LLP founded Fisch Sigler in 2012 in Washington, D.C. Since then, Fisch Sigler has represented and litigated for and against some of the largest companies in the world, becoming a nationally-recognized, top-tier patent litigation firm. The ten-attorney firm has won multiple patent infringement trials representing both plaintiffs and defendants and prevailed on numerous appeals at the Federal Circuit.[2] Given this track record of success, Fisch Sigler and its attorneys are regularly recognized for their work. For example, U.S. News & World Report has consistently ranked Fisch Sigler in its top grouping—Tier 1—among Washington, D.C. patent litigation firms.[3]

### B.    Largan Is One of Taiwan's Largest Companies and A Sophisticated Consumer of United States Legal Services

Largan designs, manufactures, and sells camera lenses that are in smart phones, notebook computers, tablets, video gaming systems, doorbell cameras, scanners, cars, and many other

---

[1] *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983) (explaining the "liberal federal policy favoring arbitration agreements").

[2] *See* https://fischllp.com/results/.

[3] *See* https://fischllp.com/recognition/.

devices where cameras are found. Largan has sold its lenses to the world's largest technology companies including Apple, Google, Microsoft, and Samsung.[4] And because of these multi-million dollar supply agreements, Largan currently has a market capitalization of $7.35 billion and is one of the largest companies on the Taiwanese stock exchange.[5]

Largan is led by its CEO, Dr. Lin, who has served in that role since 2010 when his father passed him that title.[6] And during the parties' negotiation of the Retention Agreement, Largan was represented at all times by Chia-Wen Lee, though Dr. Lin was also included on every email during the negotiations and throughout the representation.[7] Ms. Lee earned her J.D. from Penn State University Law School and has been a member of the New York Bar since 2008.[8] Ms. Lee initially practiced law in the United States, and later returned to Taiwan to work for Largan, reporting directly to Dr. Lin.[9] Ms. Lee is only licensed to practice in the United States and doesn't have a Taiwanese bar license.[10]

Like many large, sophisticated companies, Largan has been a frequent purchaser of legal services and a regular participant in the U.S. legal system. Before seeking Fisch Sigler's services, Largan had also litigated patent infringement actions in the U.S. District Courts for the Northern and Southern Districts of California, and at the Federal Circuit. In these cases, Largan asserted that Samsung and Genius Electronic Optical (another Taiwanese lens manufacturer) infringed

---

[4] Dkt. No. 1-2, Ex. 3 to Largan's Motion to Stay ("Largan's Mot.") at 1.

[5] *See* https://companiesmarketcap.com/largan-precision/marketcap/ (last visited May 26, 2022).

[6] Ex. A, Fisch Sigler's Dec. 16, 2021 Letter to ACAB at 1-2. Exhibit citations are to the exhibits to the Declaration of R. William Sigler ("Sigler Decl.").

[7] Sigler Decl. at ¶ 3; *see* Dkt. No. 1-2, Ex. 2 to Largan's Mot. at 1.

[8] Ex. B, Chia-Wen Lee NY Bar Profile.

[9] Dkt. No. 1-2, Ex. 2 to Largan's Mot. at 1.

[10] Sigler Decl. at ¶ 4.

Largan's patents, and that it didn't infringe Fujinon's patents.[11] Largan engaged some of the country's largest law firms in these patent litigations, including Fish & Richardson, Finnegan Henderson, and Perkins Coie.[12] And during the past 20 years, Largan has amassed a United States patent portfolio of 943 patents.[13] In doing so, Largan has retained more than a dozen U.S.-based law firms for its Patent Office proceedings. These firms include Locke Lord, Hanley, Flight, & Zimmerman, and Morris, Manning, & Martin.

### C.    The Parties' Negotiations of the Retention Agreement

The negotiations between Fisch Sigler and Largan began on June 6, 2019, following a February 2019 introductory, in-person meeting between Ms. Lee and Fisch Sigler attorneys. In a June 6 email to the firm, Ms. Lee provided background on a potential offensive patent infringement case and asked for a proposal describing the firm's theory of infringement, choice of forum, which defendants to name, economic terms, a timeline, and a budget for an early case assessment.[14] After Ms. Lee provided some additional background materials and had a phone call with Fisch Sigler partners Alan Fisch and Bill Sigler, Fisch Sigler provided a written economic proposal on June 16.[15] Further emails and a June 30th phone call between Ms. Lee and Fisch Sigler followed, and the firm provided an updated written proposal on July 3.[16]

---

[11] *Largan Precision Co. Ltd. v. Fujinon Corp.*, Case No. 4:10-cv-01318 (N.D. Cal.), *Largan Precision Co. Ltd. v. Genius Elec. Optical Co., Ltd.*, Case No. 3:13-cv-02502 (N.D. Cal.), and *Largan Precision Co. Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 3:13-cv-02740 (S.D. Cal.).

[12] Ex. A, Fisch Sigler's Dec. 16, 2021 Letter to ACAB at 2. Fisch Sigler has never seen any agreements with these law firms, and so is unaware if any contain an arbitration provision. Largan would, of course, possess that information.

[13] *Id.*

[14] Ex. C, June 2019 Email Discussion Between W. Lee and A. Fisch at 4-5.

[15] Dkt. No. 1-2, Ex. 6 to Largan's Mot. at 19; Dkt. No. 1-2, Ex. 7 to Largan's Mot.

[16] Dkt. No. 1-2, Ex. 6 to Largan's Mot. at 15-16; Dkt. No. 1-2, Ex. 8 to Largan's Mot.

With negotiations progressing, on July 11 Ms. Lee asked the firm to provide additional, standard terms of an engagement agreement that the firm wanted Largan to consider.[17] The next day, July 12, the firm provided those terms in an email, which included the arbitration provision at issue: "In the event that a dispute arises relating to the firm's fees, the Client and the firm agree to mandatory arbitration before the Washington, D.C. Bar Attorney/Client Arbitration Board. A copy of the D.C. Bar Attorney/Client Arbitration Board's rules is available from the staff of the D.C. Bar Attorney/Client Arbitration Board."[18]

After receiving these terms, Ms. Lee responded with emails on July 11 and on July 17 asking additional questions.[19] None of Ms. Lee's questions concerned the arbitration provision; rather they addressed the economic terms and what patents to assert.[20] Based on those questions and further discussions, Fisch Sigler then sent Ms. Lee an updated proposal on July 18.[21] This proposal also included the arbitration provision.[22] After the parties discussed some of the terms of the updated proposal, Largan accepted all of its terms, including the arbitration provision, and asked for a draft engagement letter.[23] On July 24, the firm sent the draft engagement letter, which included the arbitration provision.[24] Ms. Lee proposed two changes to the letter: (1) replacing her

---

[17] Dkt. No. 1-2, Ex. 6 to Largan's Mot. at 13.

[18] *Id.* at 11-12.

[19] *Id.* at 6-11. The differences in the dates are due to the 13-hour time zone difference between Washington, D.C. and Taiwan. For example, the firm sent the arbitration provision to Ms. Lee at 9:22 am Taiwanese time and Ms. Lee responded to that email, which is dated July 11 at 10:51 pm Eastern Time. *Id.* at 10-11.

[20] *Id.* at 6-11.

[21] *Id.* at 5.

[22] Dkt. No. 1-2, Ex. 9 (2019-07-18 Engagement Proposal) to Largan's Mot. at 8.

[23] Dkt. No. 1-2, Ex. 6 to Largan's Mot. at 3-4.

[24] *Id.* at 2-3.

as signatory with Dr. Lin, and (2) adding a provision specific to one of the targets of the underlying lawsuit, Newmax.[25] Fisch Sigler agreed to these changes, and Largan executed the agreement on July 25, 2019.[26]

In total, the parties negotiated the terms of Fisch Sigler's Retention Agreement for 50 days, from June 6, 2019 to July 25, 2019. During those negotiations, Ms. Lee sent a total of 18 emails regarding the firm's retention, proposal, and engagement agreement.[27] This included eight emails after the firm provided the arbitration provision for Largan's consideration on July 12.[28] And, as noted, Fisch Sigler also provided the same provision in a July 18 proposal and July 24 draft engagement letter. Largan, through its U.S.-barred counsel Ms. Lee, didn't raised any issues with that provision.

### D.    The Patent Infringement Action Succeeds

The firm then represented Largan in its litigation against its primary rival, Ability Opto-Electronics Technology Co., Ltd. ("AOET"), as well as another competitor, Newmax Technology Co., Ltd. ("Newmax"), and HP, Inc. Largan settled with its two competitors during the litigation.[29] The settlement with AOET also included a public apology from its CEO to Largan for its infringement of Largan's patents.[30]

---

[25] *Id*. at 1-2.

[26] Dkt. No. 1-2, Ex. 1 to Largan's Mot.

[27] *See generally*, Dkt. No. 1-2, Ex. 6 to Largan's Mot.; Ex. C, June 2019 Email Discussion Between W. Lee and A. Fisch.

[28] Dkt. No. 1-2, Ex. 6 to Largan's Mot. at 1-12.

[29] Dkt. No. 1-2, Ex. 3 to Largan's Mot. at 2. Largan decided to dismiss its case against HP, Inc. after settling with its rivals. *Largan Precision Co. Ltd. v. Ability Opto-Electronics Tech. Co., Ltd.*, Case No. 3:20-cv-06607 (N.D. Cal.), Dkt. No. 189.

[30] *Largan Precision Co. Ltd. v. Ability Opto-Electronics Tech. Co., Ltd.*, Case No. 3:20-cv-06607 (N.D. Cal.), Dkt. No. 184.

During the litigation, Largan regularly expressed satisfaction with Fisch Sigler's representation, timely paying all of the firm's fixed fee invoices without complaint.[31] This included payment of the fixed fees shown in the Retention Agreement from the July 2019 pre-filing phase to September 2020, when the case was transferred from the Eastern District of Texas to the Northern District of California. Per the Retention Agreement, the parties then negotiated a revised fixed fee schedule based on the case proceeding in California and the remaining parties.[32] Ms. Lee negotiated that schedule for Largan, and Largan paid Fisch Sigler's fixed fee invoices for litigating the patent infringement action in California from October 2020 through April 2021.[33]

As the litigation progressed, Largan also retained Fisch Sigler to represent Largan in several matters that went beyond the Retention Agreement. This included defending *inter partes* reviews brought by AOET and HP at the United States Patent & Trademark Office, and defending a petition for a writ of mandamus brought by HP at the Federal Circuit.[34] For those matters, Largan timely paid Fisch Sigler's fixed fee and hourly invoices without complaint.[35] These additional matters also included investigating potential patent infringement actions against other targets. Fisch Sigler undertook these additional efforts before the AOET, Newmax, and HP litigation concluded.[36]

---

[31] Sigler Decl. at ¶¶ 7-8.

[32] Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 7 (revised fee schedule).

[33] Sigler Decl. at ¶ 9.

[34] *Id*. at ¶ 10. An *inter partes* review is a proceeding whereby an accused patent infringer can ask the Patent Office to find an already-issued patent invalid.

[35] *Id*. at ¶ 10.

[36] *Id*.

And Largan continued to solicit Fisch Sigler to work on new actions months after that. Indeed, as late as August 2021—roughly a month before Fisch Sigler filed its request with the ACAB—Largan requested a representation proposal from Fisch Sigler to work on Largan's next patent infringement case.[37]

Thus, Largan's prior actions belie its present protestations that it was dissatisfied with Fisch Sigler's performance and treated unfairly.[38]

### E.   Largan Refuses to Pay Any Success Bonus and Fisch Sigler Invokes the Arbitration Provision

Under the Retention Agreement's terms, the parties shared the risk and reward associated with the litigation, agreeing to a reduced fixed fee in exchange for Fisch Sigler's ability to receive a bonus if the litigation proved successful. That bonus required Largan to pay Fisch Sigler "25% of the case profit (i.e., the amount recovered less legal costs paid) if the case concludes before the court issues the claim construction order, with a minimum to the firm of $250,000."[39]

---

[37] *Id*. at ¶ 11. Largan filed a patent infringement suit against Motorola on November 24, 2021 in the United States District Court for the Northern District of California. *Largan Precision Co. Ltd. v. Motorola Mobility, LLC*, Case No. 4:21-cv-09138 (N.D. Cal.).

[38] In particular, and contrary to Largan's spurious allegation, Fisch Sigler never charged for work it didn't do. The firm updated Ms. Lee and Dr. Lin through daily (and sometimes multi-daily) emails on case developments and activities, and held a bi-weekly case status call with Ms. Lee. Sigler Decl. at ¶ 5. Largan knew precisely what work the firm completed in the case, despite Largan's ex post assertions in its motion, which are incorrect. By way of example, Largan asserts that Fisch Sigler never completed a technology tutorial in the case, despite charging Largan for it. Dkt. No. 1, Largan's Mot. at 3-4. Fisch Sigler completed that tutorial—an 11-minute live action video with animations—and provided it to Largan in December 2020. Sigler Decl. at ¶ 7. With Ms. Lee's approval, Fisch Sigler also submitted that tutorial to the case mediator as part of its mediation statement that same month. *Id*. at ¶ 7.

[39] Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 3. The district court in a patent litigation typically issues a claim construction order defining the meaning of certain terms in the patent towards the latter part of the case discovery period. The underlying litigation here was resolved before such an order issued.

But despite the litigation's success, Largan hasn't paid any of the success bonus to Fisch Sigler—not even the minimum $250,000 fee required in the Retention Agreement.[40] Following the execution of the settlement agreement with AOET, Fisch Sigler learned through the Taiwanese press that Largan and AOET had agreed that AOET would sell Largan 15.2% of AOET's stock at a 41.22% price reduction as part of the settlement.[41] Given this additional compensation and the conflict of interest it created in settling with AOET, the parties disagreed as to the amount and timing of the success bonus. After the parties' initial discussions proved unsuccessful, Fisch Sigler asked Largan to mediate the dispute on six separate occasions.[42] Despite the Retention Agreement requiring the mediation of "any dispute over the amount of any success bonus," Largan refused each time the firm asked, asserting that there was no dispute regarding the amount of the success bonus. And Largan emphasized that if Fisch Sigler arranged for mediation, Largan had "no intention to participate."[43]

After six months of unsuccessful discussions and with Largan maintaining that it wouldn't participate in mediation, Fisch Sigler filed its complaint in the ACAB on September 15, 2021. Largan objected to Fisch Sigler's complaint, arguing that the firm had failed to comply with ACAB Rule 8(c)(iii) for the arbitration provision from Largan.[44] Fisch Sigler responded to Largan's objection in a December 16, 2021 submission, asserting that Largan's representation by U.S.-barred counsel during the negotiations satisfied the requirements of ACAB Rule 8.[45]

---

[40] Sigler Decl. at ¶ 12.

[41] Dkt. No. 1-2, Ex. 3 to Largan's Mot. at 3. *See* https://www.taipeitimes.com/News/biz/archives/2021/03/10/2003753537 (last visited May 23, 2022).

[42] Sigler Decl. at ¶ 13.

[43] *Id.*

[44] Ex. D, Largan's Oct. 20, 2021 Letter to ACAB.

[45] Ex. A, Fisch Sigler's Dec. 16, 2021 Letter to ACAB.

Before the ACAB had decided the issue, Largan filed its motion to stay in this Court.

## III.    ARGUMENT

### A.    The ACAB Should Decide Whether the Agreement Follows the ACAB's Rules

In its motion to stay, Largan attempts to frame the dispute as whether an agreement to arbitrate exists so that this Court, and not the ACAB, will decide the underlying issue.[46] But the Retention Agreement itself shows that an agreement to arbitrate exists—indeed, it contains the arbitration provision. And both parties signed that contract, indicating that they assented to its terms. As Judge Huvelle explained, "a signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation."[47] There's thus a valid agreement to arbitrate.

The dispute instead concerns whether Fisch Sigler complied with the procedural requirements of ACAB's Rule 8(b)(iii) and the applicable D.C. Ethics Opinions to enforce the arbitration provision in that forum. That Rule states that to enforce an arbitration provision, "the client must have been adequately informed of the scope and effect of a mandatory arbitration provision, consistent with D.C. Bar Legal Ethics Committee Opinion 376."[48] Indeed, in its objection to the ACAB, Largan argued that "Rule 8(b)(iii) requires that 'the client must have been adequately informed of the scope and effect of a mandatory arbitration provision, consistent with D.C. Bar Legal Ethics Committee Opinion 376.' Fisch did not do so."[49]  But in its motion,

---

[46] Dkt. No. 1, Largan's Mot. at 7 ("Largan disputes the *existence* or formation of a valid agreement").

[47] *Emeronye v. CACI Intern., Inc.*, 141 F. Supp. 2d 82, 86 (D.D.C. 2001) (finding a signed arbitration clause of an employment contract enforceable); *see Sig. Tech. Solutions v. Incapsulate LLC*, 58 F. Supp. 3d 72, 81-82 (D.D.C. 2014); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995).

[48] ACAB Rule 8(b)(iii).

[49] *See* Ex. D, Largan's Oct. 20, 2021 Letter to ACAB at 1.

Largan focuses instead on Ethics Opinion 376.[50] Despite Largan's pivot, the analysis is the same because ACAB Rule 8 fully incorporates Ethics Opinion 376.[51]

When deciding whether a party has complied with an arbitration body's rules, courts have deferred to the arbitrator. That approach makes good sense, since arbitrators wield particular expertise in interpreting and applying their own rules. As the Supreme Court stated in analyzing a similar issue in a National Association of Securities Dealers arbitration, "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it."[52] And the D.C. Code is consistent with this approach. While Section 16-4406(b) of the Code states that "courts decide whether an agreement to arbitrate exists," subsection (c) mandates that "[a]n arbitrator decide whether a condition precedent to arbitrability has been fulfilled."[53] And those conditions precedent include whether procedural prerequisites, such as notice, time limits, or compliance with the arbitration body's own rules, have been met.[54] Whether Fisch Sigler provided the requisite level of information under ACAB Rule 8 and the

---

[50] Dkt. No. 1, Largan's Mot. at 10.

[51] ACAB Rule 8(b)(iii).

[52] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The D.C. Court of Appeals has also endorsed this approach. In *Woodland Ltd. Partnership v. Wulff*, that court found that because the agreement stated that the arbitration would proceed under the rules of the American Arbitration Association, the arbitrators were in the best position to determine if the defendant had complied with those rules. 868 A.2d 860, 865 (D.C. 2005).

[53] D.C. Code § 16-4406(c).

[54] *Woodland*, 868 A.2d at 865 (finding that because the arbitration agreement provides that the American Arbitration Association's rules would govern, "the AAA arbitrator in this case should be well-placed to decide the question of waiver"); see *Howsam*, 537 U.S. at 84; *see also University of the District of Columbia Faculty Ass'n v. Board of Trustees of the University of the District of Columbia*, 257 A.3d 1026, 1031-32 (D.C. 2021) (finding that the arbitrators should decide procedural prerequisites and providing the examples of "time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met"); *Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458, 464 (D.C. 2010) (similar).

Ethics Opinions is a condition precedent that must be determined before arbitration can proceed.[55]

And the cases Largan cites aren't to the contrary, as none involved an arbitration body's interpretation and enforcement of its own rules. Instead, each decided whether an executed agreement to arbitrate existed. For example, in *Masurovsky v. Green*, the client signed an agreement with an attorney that included an arbitration provision.[56] He then signed a second agreement with a second attorney that didn't include an arbitration provision.[57] In a later suit, both attorneys attempted to enforce the arbitration clause from the first agreement against the client.[58] The D.C. Court of Appeals stated that a court should decide whether both attorneys could enforce the arbitration provision from the first agreement.[59]

Instead of whether a valid agreement exists, Largan's objection is whether Fisch Sigler complied with ACAB Rule 8 and D.C. Ethics Opinion 376.[60] That objection concerns the type of procedural prerequisite to arbitration that the Supreme Court, the D.C. Court of Appeals, and the D.C. Code have held that the ACAB, and not the courts, should decide.

---

[55] *Id.*

[56] 687 A.2d 198, 200 (D.C. 1996).

[57] *Id.* at 201.

[58] *Id.*

[59] *Id.* at 204-05. The *First Options of Chicago, Inc. v. Kaplan* case Largan relies on is similar. In that case, the Kaplans' wholly owned company had signed an agreement with an arbitration provision, but the Kaplans had not. 514 U.S. 938, 941 (1995). First Chicago sought to enforce the provision against the Kaplans and the Supreme Court held that whether the arbitration provision applies to the Kaplans should be decided by a court and not the arbitrator, unless the parties' agreed otherwise. *Id.* at 943.

[60] As discussed below, Fisch Sigler did comply with ACAB Rules and D.C. Bar Ethics Opinions in its negotiations with Largan.

**B.     The Arbitration Provision is Enforceable Because U.S.-Barred Independent Counsel Represented Largan During the Negotiations**

Because Ms. Lee, a U.S.-barred and trained attorney, represented Largan (a sophisticated purchaser of legal services) throughout the negotiations, the arbitration provision should be enforced.

In its motion, Largan primarily relies on D.C. Bar Ethics Opinion 376, which ACAB Rule 8 fully incorporates. That opinion's background is instructive. Before its issuance, Washington, D.C., like many jurisdictions, included substantial restrictions on when an attorney-client agreement could include an arbitration provision. D.C. Bar Ethics Opinion 211 exemplified this more restrictive approach. That opinion found that discussing "the ramifications of an agreement to arbitrate" with a lay client was insufficient under the rules.[61] This was because of the complex and unique nature of an arbitration proceeding, which a non-lawyer wouldn't be able to fully understand.[62] So Ethics Opinion 211 held that arbitration provisions between attorney and client weren't permitted "unless the client is in fact counseled by another attorney."[63]

As arbitration provisions became more ubiquitous, the D.C. Bar issued the new, more permissive Ethics Opinion 376. That opinion found that Ethics Opinion 211's "more onerous" requirement that a client obtain representation by independent legal counsel was "no longer required."[64] Ethics Opinion 376 reasoned that with arbitration provisions becoming more common,

---

[61] D.C. Bar Ethics Opinion 211 at 3.

[62] *Id*. at 4.

[63] *Id*.

[64] D.C. Bar Ethics Opinion 376 at 3.

the "selection of an arbitration forum as the setting in which fee disputes will be resolved does

not give a lawyer any particular advantage over his or her client."[65]

      Ethics Opinion 376 then discussed the level of information that a lawyer should discuss

with a client about the arbitration provision, noting that "the scope of this discussion depends on

the level of sophistication of the client."[66] In determining the requisite level of information, the

Opinion heavily relied on D.C.'s Rule of Professional Conduct 1.0(e), which defined "informed

consent."[67] Comment 2 to that rule addresses the amount of information required when inde-

pendent counsel represents a sophisticated party. It states that:

> In determining whether the information and explanation provided are reasonably ade-
> quate, relevant factors include whether the client or other person is experienced in legal
> matters generally and in making decisions of the type involved, and whether the client or
> other person is independently represented by other counsel in giving the consent. Nor-
> mally, such persons need less information and explanation than others, and generally a
> client or other person who is independently represented by other counsel in giving the
> consent should be assumed to have given informed consent.[68]

In other words, a sophisticated client represented by independent counsel is assumed to have

given informed consent when it agrees to the terms of a contract.

      And here, Largan gave its informed consent because Ms. Lee, a U.S.-barred and trained

attorney, represented it throughout the negotiations.[69] She was Largan's sole representative in ne-

gotiating the Retention Agreement. And as part of her duties as in-house counsel, Ms. Lee should

have reviewed the relevant provisions of the Retention Agreement and advised her client. And it

---

[65] *Id*. at 5.

[66] *Id*. at 6.

[67] *Id*.

[68] D.C. Rule of Prof. Conduct 1.0(e), Comment 2. While Largan cited to this comment in its mo-
tion, it failed to address the portion of the comment that discusses clients who are represented by
independent counsel. Dkt. No. 1, Largan's Mot. at 12.

[69] Sigler Decl. at ¶¶ 3-4; *see* Dkt. No. 1-2, Ex. 2 to Largan's Mot. at 1.

appears that she did just that, sending 18 emails to Fisch Sigler regarding the firm's retention during the 50-day negotiation period, including 8 emails during the 13-day period following Fisch Sigler providing the arbitration provision and its other standard terms.[70] And to this date, Ms. Lee has never stated that she was unaware of the arbitration provision or didn't understand its import. Largan submitted a declaration from Ms. Lee along with its motion, but such a statement is absent from it.[71] But regardless, Largan "should be assumed to have given [its] informed consent" when it didn't raise any issues with the provision during the parties' negotiations.

And this approach remains consistent with the purpose of Ethics Opinion 376. That opinion explicitly sought to loosen the more onerous requirements of the prior Ethics Opinions and expand the circumstances under which an arbitration provision was acceptable.[72] But Largan's interpretation of Ethics Opinion 376 would make it more difficult, not less, to be able to enforce an arbitration provision. For example, under Ethics Opinion 211, an arbitration provision would be enforceable against a client, like Largan, that was represented by counsel.[73] But under Largan's interpretation, Ethics Opinion 376 would provide additional requirements for a client represented by counsel, namely that the retained firm would need to have an in-depth discussion with the prospective client about the arbitration provision. This runs counter to Ethics Opinion 376's goal of expanding the circumstances in which an arbitration provision can be enforced. It would also cast aside the role of the client's independent counsel and require the retained counsel to instead provide information and advice regarding the arbitration provision.

---

[70] *See generally* Dkt. No. 1-2, Ex. 6 to Largan's Mot.; Ex. C, June 2019 Email Discussion Between W. Lee and A. Fisch.

[71] Dkt. No. 1-2, Ex. 2 to Largan's Mot.

[72] D.C. Bar Ethics Opinion 376 at 3, 5.

[73] D.C. Bar Ethics Opinion 211 at 4.

The purpose behind Ethics Opinion 376 and ACAB Rule 8 also sought to prevent unrepresented and unsophisticated clients from agreeing to arbitration provisions without understanding their ramifications. Largan is a sophisticated consumer of legal services with a U.S.-barred in-house attorney that reported directly to its CEO.[74] Indeed, Largan has retained some of the largest law firms in the country to represent it in the U.S. court system.[75] Largan also has entered into multi-million dollar supply agreements with some of the largest U.S.-based technology companies in the world, including Apple, Microsoft, and Google.[76] So Largan isn't the unsophisticated and unrepresented client that the Rules sought to protect.

And rather than seeking to adjudicate this dispute in another forum, Largan instead seeks to avoid Fisch Sigler's enforcement of the Retention Agreement anywhere. In its motion, Largan states that it has no United States offices.[77] As a result, it's clear that Largan will resist jurisdiction in any United States forum. And Largan's arguments regarding the difficulties with attending an arbitration in D.C. are belied by its regular use of the U.S. legal system and business activities in the U.S. Aside from this case, Largan has initiated five cases in U.S. district courts since 2010 and obtained 943 U.S. patents during the last 20 years.[78] And Largan employees also

---

[74] Ex. B, Chia-Wen Lee NY Bar Profile; Dkt. No. 1-2, Ex. 2 to Largan's Mot. at 1.

[75] Ex. A, Fisch Sigler's Dec. 16, 2021 Letter to ACAB at 2.

[76] Dkt. No. 1-2, Ex. 3 to Largan's Mot. at 1.

[77] Dkt. No. 1, Largan's Mot. at 2.

[78] Those five cases are *Largan Precision Co. Ltd. v. Fujinon Corp.*, Case No. 4:10-cv-01318 (N.D. Cal.), *Largan Precision Co. Ltd. v. Genius Elec. Optical Co., Ltd.*, Case No. 3:13-cv-02502 (N.D. Cal.), *Largan Precision Co. Ltd. v. Motorola Mobility, LLC*, Case No. 4:21-cv-09138 (N.D. Cal.), *Largan Precision Co. Ltd. v. Ability Opto-Electronics Tech. Co., Ltd.*, Case No. 4:19-cv-000696 (E.D. Tex.), and *Largan Precision Co. Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 3:13-cv-02740 (S.D. Cal.).

frequently visit the United States as part of their work, with Largan maintaining an apartment in the United States for its employees to stay in when they visit Apple and other customers.[79]

Largan also points to the unique nature of ACAB proceedings as supporting its stay request. But the Ethics Opinions and Rules don't vary based on the specific arbitration forum at issue. And because Largan was represented by U.S.-barred counsel, it "should be assumed to have given informed consent" when it signed the Retention Agreement. Indeed, Largan's U.S.-barred counsel should have investigated the ACAB rules and advised her client. And she may have done that as her declaration is silent on that point. The Retention Agreement also specifically invited her and Largan to do so, noting that "[a] copy of the D.C. Bar Attorney/Client Arbitration Board's rules is available from the staff of the D.C. Bar Attorney/Client Arbitration Board."[80]

Thus, because a U.S.-trained and barred attorney represented Largan during the negotiations of the Retention Agreement, the agreed-to arbitration provision should be enforced against Largan and the proceeding should continue at the ACAB.

### C.   Largan Agreed to Have the ACAB Hear Any Disputes About the Success Bonus

The Retention Agreement states that the ACAB is the proper forum for any dispute regarding "the firm's fees."[81] Largan argues that the term "fees" doesn't include the "success bonus" because the terms are differentiated throughout the Retention Agreement.[82] Not so. The

---

[79] Sigler Decl. at ¶ 14.

[80] Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 5-6.

[81] Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 5.

[82] Dkt. No. 1, Largan's Mot. at 15.

agreement consistently uses the term "fixed fees" and not the broader term "fees."[83] For example, the agreement uses the term "fixed fee" 23 times. Rather than apply to the term "fixed fees," the arbitration provision applies to Fisch Sigler's "fees," generally. Those fees would encompass payments to Fisch Sigler for its services, including both the fixed fees and the success bonus.

And to the extent the term "fees" is ambiguous in the agreement, the presumption in favor of arbitration applies. That presumption requires a determination of "whether the arbitration clause is susceptible of an interpretation that covers the dispute."[84] If the term is susceptible to that interpretation, then the arbitration clause at issue should cover that dispute. In other words, "any ambiguity is construed in favor of arbitration."[85] And that presumption can only be rebutted if there is "a positive assurance that the parties didn't intend the dispute *sub judice* to be resolved through arbitration."[86]

Here, the term "fees" is susceptible to an interpretation that includes the success bonus. While the term "fees" isn't defined, its ordinary meaning of "a charge or payment for professional services" would include the success bonus. And the Retention Agreement consistently uses (and defines) the term "fixed fees."[87] But it doesn't define the broader term "fees" and doesn't differentiate it from the success bonus. And there's no evidence that the parties didn't

---

[83] *See, e.g.,* Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 3.

[84] *Johansson v. Cent. Properties, LLC*, 320 F. Supp. 3d 218, 221-22 (D.D.C. 2018) (citing *Woodroof v. Cunningham*, 147 A.3d 777, 787-88 (D.C. 2018).

[85] *Woodroff*, 147 A.3d at 789.

[86] *Johansson*, 320 F. Supp. 3d at 222 (citing *2200 M Street LLC v. Mackell*, 940 A.2d 143, 151 (D.C. 2007); *see Jahanbein v. The Ndidi Condominium Unit Owners Ass'n, Inc.*, 85 A.3d 824, 827 (D.C. 2014).

[87] Dkt. No. 1-2, Ex. 1 to Largan's Mot. at 3.

intend a success bonus dispute to be resolved through arbitration as would be required to over-come the presumption.[88]

Largan also points to the mediation provision as indicating that mediation and not arbitra-tion is the proper means to resolve this dispute. But the two aren't mutually exclusive. The Re-tention Agreement contemplates that the parties will mediate such a dispute first and if it's un-successful, initiate arbitration at the ACAB. And that is precisely what Fisch Sigler sought to do here. Specifically, Fisch Sigler asked Largan on six different occasions to mediate this dispute. Largan refused each time, stating that Largan had "no intention to participate."[89] So Fisch Sigler filed a complaint with the ACAB.

Thus, because the arbitration provision includes disputes regarding the success bonus and is, at least, susceptible to an interpretation that does, it should proceed in the ACAB.

## IV.     CONCLUSION

Largan seeks to permanently stay this arbitration based on Fisch Sigler's purported fail-ure to comply with the applicable ACAB Rules and D.C. Ethics Opinions. These are the types of procedural prerequisites that the arbitrator—here the ACAB—should decide. And regardless of who decides the dispute, Fisch Sigler complied with the applicable Rules and Ethics Opinions, each of which establishes that a sophisticated client represented by independent counsel that agrees to the terms of a contract is assumed to have provided its informed consent. And the pre-sumption of arbitrability further weighs in favor of finding that the arbitration at the ACAB should proceed here. That would also align with the ACAB's purpose of providing an efficient,

---

[88] *Johansson*, 320 F. Supp. 3d at 222 (citing *2200 M Street LLC v. Mackell*, 940 A.2d 143, 151 (D.C. 2007); *see Jahanbein v. The Ndidi Condominium Unit Owners Ass'n, Inc.*, 85 A.3d 824, 827 (D.C. 2014).

[89] Sigler Decl. at ¶ 13.

specifically-focused service for attorneys and their clients to resolve fee disputes, as well as the

federal policy in favor of arbitration. Thus, this Court should deny Largan's motion to perma-

nently stay the arbitration and allow Fisch Sigler to have its claim for non-payment heard by the

parties' agreed-to arbitrator.

Dated: May 26, 2022                          Respectfully submitted,

                                             */s/ Jeffrey M. Saltman*
                                             Alan M. Fisch
                                             D.C. Bar No. 453068
                                             *alan.fisch@fischllp.com*
                                             R. William Sigler
                                             D.C. Bar No. 490957
                                             *bill.sigler@fischllp.com*
                                             Jeffrey M. Saltman
                                             D.C. Bar No. 979812
                                             *jeffrey.saltman@fischllp.com*
                                             FISCH SIGLER LLP
                                             5301 Wisconsin Avenue NW
                                             Fourth Floor
                                             Washington, DC 20015
                                             202.362.3500

                                             *Attorneys for Fisch Sigler LLP*