# Exhibit A

# FISCH SIGLER LLP

5301 Wisconsin Avenue NW | Fourth Floor | Washington, DC 20015 USA

December 16, 2021

**Jeffrey M. Saltman**
Partner
Jeffrey.Saltman@FischLLP.com
Direct: +1.202.362.3640
Main: +1.202.362.3500

**VIA EMAIL**

Kathleen Lewis
Associate Director
Attorney/Client Arbitration Board
901 4th Street, NW
Washington, DC 20001
klewis@dcbar.org

      Re:    *Fisch Sigler LLP v. Largan Precision Co., Ltd.*

Dear Ms. Lewis:

    Thank you for the opportunity to respond to Largan's October 20 letter. The parties negotiated Fisch Sigler's retention over the course of 50 days in June and July 2019. Throughout those negotiations, Largan was represented by its United States-barred in-house counsel. One of the terms that resulted from those negotiations was for the ACAB to hear disputes like this one. And each of Largan's arguments for nullifying its agreement to proceed before the ACAB omits critical facts and law.

    First, Largan alleges that it shouldn't be bound by its agreement to arbitrate because it didn't understand the meaning or significance of such an agreement. But the rule that Largan cites, ACAB Rule 8(b), exists to prevent attorneys from taking advantage of unsophisticated and unrepresented clients. Indeed, the Ethics Opinions relating to that rule require that an attorney convey information regarding the full scope and effect of the arbitration provision to an unsophisticated, unrepresented client, but not to a sophisticated client that has independent legal counsel.[1] Largan is and was neither unsophisticated nor unrepresented.

    During its negotiations with Fisch Sigler, Largan was represented by Chia-Wen Lee. Ms. Lee earned a J.D. from Penn State University Law School and has been a member of the New York Bar since 2008. Ms. Lee initially practiced law in the United States, and later returned to Taiwan to work for Largan.

    Ms. Lee's prominent role in the negotiations is unsurprising given Largan's size and extensive dealings with the U.S. Largan is a publicly traded corporation with a market capitalization of over a quarter trillion Taiwanese dollars ($9.8 billion U.S.). Largan is led by its CEO, Dr. Adam

---

[1] *See* D.C. Bar Ethics Opinion 211 (permitting mandatory arbitration provisions only when the client has received advice of independent counsel), *superseded by*, D.C. Bar Ethics Opinion 376 (loosening that requirement); *see also* D.C. Bar Ethics Opinion 376 ("the scope of this discussion [between attorney and client] depends on the level of sophistication of the client").

- 2 -

Lin, who has served in that role for over a decade since his father passed the title to him in 2010.[2] Largan supplies lenses for use in electronic devices where cameras are found. For example, Apple selected Largan to supply lenses on the inaugural iPhone and every version of the iPhone since has included a Largan lens. As such, Largan has regularly negotiated and entered into multi-million and billion dollar supply agreements with companies like Apple. And during the past 20 years, Largan has amassed a sizeable United States patent portfolio of 874 patents. Largan has used more than a dozen U.S.-based law firms in the Patent Office proceedings to obtain those patents. And aside from Fisch Sigler, Largan has also retained at least four other laws firms for its U.S. patent litigation, including Perkins Coie, Fish & Richardson, and Finnegan Henderson.

And the course of the negotiations here belies Largan's suggestion that it was taken advantage of. Ms. Lee first asked Fisch Sigler for a proposal to represent Largan on June 6, 2019.[3] After several email exchanges and a call with Ms. Lee on June 11,[4] the firm provided a written proposal on June 16.[5] The firm provided an updated written proposal on July 3, after further email exchanges and another call with Ms. Lee on June 30.[6]

With negotiations progressing, on July 11 Ms. Lee asked the firm to provide additional, standard terms of engagement that the firm wanted Largan to consider. The next day, July 12, the firm provided those terms in an email, including the term at issue here: "In the event that a dispute arises relating to the firm's fees, the Client and the firm agree to mandatory arbitration before the Washington, D.C. Bar Attorney/Client Arbitration Board. A copy of the D.C. Bar Attorney/Client Arbitration Board's rules is available from the staff of the D.C. Bar Attorney/Client Arbitration Board."[7]

After this, Ms. Lee responded in July 17 and 18 emails with further questions, proposed revised language, and comments about the firm's proposed terms. None of these concerned the arbitration provision.[8] Fisch Sigler sent Ms. Lee an updated, final proposal on July 18, which included the arbitration provision.[9] Largan accepted that proposal, and asked for a draft engagement

---

[2] By contrast, Fisch Sigler is an 11-attorney law firm based in Washington, D.C.

[3] *See* Ex. 1, Email Chain beginning June 6, 2019. Fisch Sigler provides this letter and the attached exhibits with the understanding that they're not to be made public, as they contain highly confidential and privileged information. The firm can provide redacted versions for public viewing, if necessary.

[4] *Id.*

[5] *See* Ex. 2, Email Chain beginning June 16, 2019.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *See* Ex. 3, Final Proposal.

letter.[10] On July 24, the firm sent Ms. Lee that draft letter, which included the same arbitration provision the firm proposed on July 12.[11] Ms. Lee proposed just two changes to the draft engagement letter: (1) replacing her as the signatory with Dr. Lin, and (2) adding a provision specific to one of the targets, Newmax.[12] Fisch Sigler agreed to these changes, and Largan executed the agreement on July 25, 2019.[13]

Hence, the firm provided the arbitration provision for Largan's consideration in a July 12 email, July 18 proposal, and July 24 draft engagement letter. Largan's U.S.-barred counsel had ample time to consider it, reject it, or propose changes to it. As such, and given Largan's sophistication, Largan didn't unknowingly or without representation agree to the arbitration clause, and it shouldn't be voided.

Second, Fisch Sigler agrees that the Retention Agreement requires the parties to mediate in California as the first step to resolve any disputes about the success bonus. But Largan's letter omits that Fisch Sigler asked Largan to mediate this claim six times before filing the complaint here—on May 13, May 26, May 28, June 15, June 19, and June 28, 2021.[14] Largan refused each time, asserting that there was no dispute. Fisch Sigler thus warned Largan that it was leaving Fisch Sigler with arbitration as the only option for resolving the issue. And given Largan's refusals, the proper course is for this matter to proceed here.[15] To be sure, the Retention Agreement specified that mediation was a step preceding arbitration, but not a process in lieu of arbitration. In other words, if mediation didn't succeed, arbitration before this body was the next step. And here, Largan's refusals to mediate warrant proceeding with this arbitration without further delay.

Third, the other Retention Agreement terms that Largan cites don't impact Fisch Sigler's claim here or whether the ACAB has jurisdiction. Even if they did, those terms (like all others) were reached over nearly two months of negotiation with a U.S.-barred attorney representing Largan at every step. And, for completeness, Fisch Sigler didn't retain funds for work it didn't per-

---

[10] *See* Ex. 2, Email Chain.

[11] *Id*.

[12] *See* Ex. 2, Email Chain.

[13] *See id.* and Ex. A to Fisch Sigler's Complaint.

[14] *See* Ex. B to Fisch Sigler's Complaint at 2, 3, 10, 11, and 13. The parties also discussed mediation during a phone call on June 15, 2021.

[15] Indeed, the Retention Agreement confirms that this is the proper forum for any dispute regarding Fisch Sigler's fees. Ex. A to Fisch Sigler's Complaint at 5-6. The definition of the term "fees" that Largan relies on applies only to the term "fixed fees." *Compare* Largan's October 20, 2021 Letter at 1-2 *with* Ex. A to Fisch Sigler's Complaint at 3. "Fixed fees" appears throughout the Retention Agreement and forms one component of Fisch Sigler's overall fees, along with the success bonus. And the operative clause requiring any dispute regarding Fisch Sigler's fees to be brought in this forum covers any type of fee, whether fixed fee or success bonus.

**FISCH SIGLER** LLP

- 4 -

form, charge for any overdue bills, or perform work contrary to Largan's instruction. Indeed, Largan indicated its satisfaction with Fisch Sigler's performance by inviting the firm in August 2021 (i.e., four months after the conclusion of the underlying case at-issue here) to submit a proposal to represent Largan in a new patent infringement case—another fact that Largan's October 20, 2021 letter omits. Fisch Sigler declined Largan's offer, given Largan's failure to follow through on its agreement to pay the success bonus and the resulting loss of trust.

Thus, Fisch Sigler respectfully requests that the ACAB retain jurisdiction and move this proceeding forward to resolution. Please let me know if you have any questions or would like any additional information. Thank you.

Sincerely,

Jeffrey M. Saltman

Cc: Katie Blatz and Counsel of Record