# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARGAN PRECISION CO., LTD. | ) ) ) |
| *Movant*, | ) ) |
| v. | ) Civil Action No. 1:22-mc-00049 ) |
| FISCH SIGLER, LLP, | ) ) ) |
| *Respondent*. | ) ) |

## LARGAN'S REPLY TO FISCH SIGLER'S OPPOSITION TO MOTION TO STAY ARBITRATION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

    I.   THE DISPUTE IS NOT ARBITRABLE BECAUSE LARGAN DID NOT AGREE TO ARBITRATE BEFORE THE ACAB. ......................................................... 2

        A.  A Lawyer Must "Fully Inform" a Client in Order to Enter an Arbitration Agreement, and There Is No Exception for Represented Clients. .......................... 3

        B.  Fully Informing the Client Pursuant to Ethics Opinion 376 *Is* Less Onerous than the Prior Requirements ....................................................................................... 7

        C.  There Is No Federal Policy that Favors Arbitration or Would Obviate the Requirement to Fully Inform the Client .................................................................. 8

        D.  Fisch Did Not Fully Inform Largan, and Thus No Agreement to Arbitrate Was Formed. .............................................................................................................. 8

    II.  THE QUESTION OF ARBITRABILITY IS FOR THIS COURT, NOT THE ACAB, TO DECIDE. ................................................................................................... 11

        A.  Where Informed Consent (or the Like) Is Required, an Agreement Is Not Formed Merely Through Execution ....................................................................... 12

        B.  This Dispute Concerns Whether an Agreement to Arbitrate Was Formed, Not Whether Fisch Fulfilled a Condition Precedent ........................................... 13

    III. FISCH CAN SUE LARGAN IN FEDERAL COURT IN CALIFORNIA. .................... 14

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Winfield*, 664 A.2d 836 (D.C. 1995) ................................................................... 12, 13

*Emeronye v. CACI Int'l, Inc.*, 141 F.Supp.2d 82 (D.D.C. 2001) ......................................... 12, 13

\* *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .......................................... 12, 13

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) .................................................... 14

*Johansson v. Cent. Prop., LLC*, 320 F.Supp.3d 218 (D.D.C. 2018) ...................................... 9, 11

\* *Masurovsky v. Green*, 687 A.2d 198 (D.C. 1996) ...................................................................... 12

*Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458 (D.C. 2010) ........................................... 14

*Morgan v. Sundance, Inc.*, No. 21-328 (2022) ............................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ............................... 8

*Signature Tech. Sols. v. Incapsulate, LLC*, 58 F.Supp.3d 72 (D.D.C. 2014) ................ 11, 12, 13

*Univ. of D.C. Fac. Ass'n v. Bd. of Trustees of Univ. of D.C.*,
  257 A.3d 1026 (D.C. 2021) .......................................................................................... 11, 12, 14

*Wash. Prop., Inc. v. Chin, Inc.*, 760 A.2d 546 (D.C. 2000) ........................................................ 13

*Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860 (D.C. 2005) ....................................................... 14

*Woodroof v. Cunningham*, 147 A.3d 777 (D.C. 2018) ..................................................... 9, 11, 14

**Statutes**

\* D.C. Code § 16-4406(b) ...................................................................................................... 11, 13

**Other Authorities**

D.C Bar, Legal Ethics Opinion 211: Fee Agreements; Mandatory Arbitration
  Clauses (1990) ........................................................................................................................... 5

\* D.C. Bar, Legal Ethics Opinion 376: Mandatory Arbitration Provisions in
  Fee Agreements (2019) ........................................................................................ 2, 3, 4, 5, 6, 7, 8

*Condition Precedent*, Black's Law Dictionary (11th ed. 2019) ................................................. 13

**Rules**

D.C. Rules of Professional Conduct 1.0(e) .............................................................................. 4, 5

D.C. Rules of Professional Conduct, Scope .................................................................................. 5

ACAB Rule 8(b)(iii) ............................................................................................................... 2–3, 13

\* Denotes authorities on which counsel chiefly relies

## INTRODUCTION

In its Opposition to Largan Precision Co.'s ("Largan's") Motion to Stay Arbitration, Fisch Sigler, LLP ("Fisch") spills substantial ink discussing Largan's market success, its many patents, its past patent litigations, its consideration of Fisch to handle other matters, and myriad irrelevant details that distract from the two specific issues now before this Court: (1) whether the parties' dispute over Fisch's claim to a $5.65 million dollar "success bonus" (on top of the $4.4 million in fees Largan already paid) is arbitrable before the D.C. Bar Attorney/Client Arbitration Board ("ACAB"), and (2) whether that question is for the Court or the ACAB to decide. Largan did not "disclose" the facts on which Fisch focuses because they are not relevant to either issue. What *is* relevant is (1) whether Fisch fully informed Largan of the scope and effect of the arbitration provision in its Engagement Letter and (2) whether that provision permits the ACAB instead of the Court to determine the issue of arbitrability. The answer to both is "no."

Pursuant to the D.C. Rules of Professional Conduct, a lawyer and a client cannot agree to arbitrate disputes unless the lawyer provides a certain level of information about the proposed provision to its client. The ACAB adopted that requirement as a constraint on its ability to compel a client to arbitrate a fee dispute filed by a lawyer. Fisch has not, and could not, make any representation in its motion or its accompanying sworn declaration that it provided—or made any effort to provide—Largan with the information minimally required by the ethics rules. Fisch instead asks the Court to turn the ethics rules on their head and impose on Largan some requirement to inform itself of the ACAB arbitration provision that Fisch quietly added late in the exchange of drafts, without explanation. Thus, pursuant to the ethics rules, there is no agreement to arbitrate. Instead, for disputes about any success bonus, the parties agreed to engage in good faith discussions and then mediate in California.

1

As to the second issue, binding precedent necessitates that courts, not arbitral bodies, decide the question of arbitrability, unless the parties clearly agreed to submit that question to the arbitrator. Nothing in the arbitration provision—or anywhere else in the Engagement Letter—contains such language. As such, Supreme Court and other controlling precedent requires this Court—not the ACAB—to decide whether or not this dispute should be arbitrated.

Finally, Fisch contends that the ACAB is the only forum in which it can adjudicate its claims because Largan will oppose jurisdiction in any United States forum. This assertion lacks merit. Fisch could bring suit, for example, in the federal courts in California—the state where Largan has appeared in actions relating to its patents, where Largan met with Fisch when first considering an engagement, where the parties chose to mediate such a dispute, and where one of Fisch's two offices is located.

### I. THE DISPUTE IS NOT ARBITRABLE BECAUSE LARGAN DID NOT AGREE TO ARBITRATE BEFORE THE ACAB.

As explained in Ethics Opinion 376, the ethics rules require that, to form a valid agreement to arbitrate with a client, a lawyer must fully inform the client of the scope and effect of a mandatory arbitration provision; and because Fisch did not do so, an agreement was never formed. Largan repeatedly challenged the existence of an agreement on these grounds throughout its Motion. (Mot. of Largan to Stay Arbitration 2, 5–6 ¶ 12, 6 ¶ 15, 7 ¶ 16, 9 ¶ 22, 10 ¶¶ 23–24, 10–11 ¶ 25, 12 ¶ 28, 15 ¶ 33, 16 ¶ 35–36, May 10, 2022 ("Largan Mot.").)[1]

---

[1] Fisch's contention that "[i]nstead of whether a valid agreement exists, Largan's objection is whether Fisch Sigler complied with ACAB Rule 8 and D.C. Ethics Opinion 376" (Opp'n at 13) is inaccurate. A valid agreement to arbitrate does not exist *because* Fisch did not fully inform Largan consistent with the ethics rules. Moreover, Fisch's contention that Largan "pivot[ed]" from ACAB Rule 8 to Ethics Opinion 376 (Opp'n at 11–12) lacks merit. In correspondence with the ACAB, Largan referenced ACAB Rule 8 to show that, under the ACAB's own rules, the ACAB lacks the authority to compel Largan to arbitrate because

2

### A. A Lawyer Must "Fully Inform" a Client in Order to Enter an Arbitration Agreement, and There Is No Exception for Represented Clients.

Fisch contends that Ethics Opinion 376 eliminated the requirement to "fully inform" a client if the client is independently represented. (Fisch's Mem. in Opp'n to Largan's Mot. to Stay Arbitration 14–18, May 26, 2022 ("Opp'n").) That is not what Ethics Opinion 376 says or did. The Opinion clarified that an agreement between an attorney and client to arbitrate fee disputes could be treated as "an ordinary fee arrangement" and, as such, "the client need not be given a reasonable opportunity to seek the advice of independent counsel," need not be "in fact counseled by another attorney," and need not "give informed consent in writing." D.C. Bar, Legal Ethics Op. 376, Part B (2019). That Opinion concluded, however, that "mandatory arbitration provisions in fee agreements are permissible, *provided that* the requirements set forth in [Rule 1.8] Comment [13] are met." *Id.* at Conclusion (emphasis added). Comment [13] requires that "the client is fully informed of the scope and effect of the agreement." Opinion 376 then explains what "fully informed" means in the context of forming an arbitration agreement:

> [I]n order for a client to be "fully informed" about the "scope and effect" of a mandatory arbitration provision, a lawyer should communicate "adequate information and explanation about the material risks of and reasonably available alternatives" to entering into a fee agreement that contains such a provision.
>
> For a client to appreciate the "scope and effect" of a mandatory arbitration provision, the lawyer must provide a client with sufficient information about the differences between litigation in the courts and arbitration proceedings. As a general matter, a discussion regarding *at least* the following differences between the two methods of dispute resolution is prudent: (1) the fees incurred; (2) the available discovery; (3) the right to a jury; and (4) the right to an appeal. As with the application of the informed consent standard, the scope of this discussion depends on the level of sophistication of the client.

---

Largan did not "adequately inform[]" Largan "consistent with [Ethics Opinion 376]." ACAB Rule 8(b)(iii).

3

*Id.* at 6 (emphasis added). If the attorney does not provide this information, an agreement to arbitrate has not been formed. *See id.* at Conclusion; *cf.* D.C. Rule of Prof. Conduct 1.0(e), cmt. [2] (noting that "a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the *consent is invalid*") (emphasis added).

Fisch, however, contends that the Opinion somehow eliminated the requirement to fully inform the client if the client is sophisticated or represented by counsel. The text of Ethics Opinion 376 belies Fisch's argument. First, the section of the Opinion quoted above is titled, "The Requirement That The Client Be 'Fully Informed.'" And nothing in the Opinion limits that requirement only to unrepresented or unsophisticated clients. *See id.*

Second, as Fisch observes, Opinion 376 expressly notes that "[a]s with the application of the informed consent standard, the scope of this discussion [i.e., the one that "fully informs" the client] depends on the level of sophistication of the client." *Id.* at 6. But it does so on the heels of articulating the minimal contours of the required discussion. *Id.* In other words, for a sophisticated or represented client, the scope of the discussion might be limited to a concise explanation of the four differences between arbitration and litigation noted in the Opinion; but a broader, more detailed discussion may be required for unsophisticated or unrepresented clients. Nowhere does the Opinion say that, for any particular client, *no* discussion is required.

Third, Fisch relies, in part, on Comment [2] to Rule 1.0(e), which notes that "*generally* a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent."[2] But Opinion 376 did not quote that language from the comment or incorporate the comment as a whole. Nor did it suggest that the

---

[2] In negotiating the engagement, Largan relied on its own in-house counsel, and did not have any other counsel review the proposed engagement.

4

general assumption noted therein would somehow supersede the specific requirements recited in the Opinion.  The Opinion simply looks to the definition of "informed consent" in Rule 1.0(e), and certain language in Comment [2], as "instructive" for understanding what is required for the client to be "fully informed." *See id.* at 5.  Moreover, the actual text of the "informed consent" definition—rather than the guidance provided in comments—is controlling.  *See* D.C. Rules of Professional Conduct, Scope, note 6.  Fisch cannot claim that it satisfied that definition: "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Rule 1.0(e).

Fourth, Fisch relies on Ethics Opinion 211 to argue that the requirement in Opinion 376 only applies to lay clients.  This logic does not follow.  Ethics Opinion 211 imposed a requirement that the client seek advice from independent counsel before entering an arbitration agreement.  *Id.*  Opinion 376 eliminates the requirement that the client obtain, or be given the opportunity to obtain, advice from independent counsel before agreeing to such a provision, and acknowledges that a fully informed client may agree to arbitrate attorney-client disputes without the opportunity for such independent representation, which Opinion 211 previously considered insufficient.

The Rules of Professional Responsibility, as explained by Ethics Opinion 376, require that, in order to form an agreement to arbitrate with a client, a lawyer must fully inform the client of *at least* four key differences between arbitration and litigation.  Nothing in the Opinion eliminates this requirement for sophisticated or represented clients.

Finally, the facts here show that fully informing Largan consistent with the ethics rules was not unnecessary or some procedural nicety.  During the relevant time period, Largan's legal


department was comprised of no more than four attorneys, of which only one, Ms. Chia-Wen Lee, was responsible for monitoring U.S. litigation with assistance of outside counsel. (*See* Second Decl. of Chia-Wen Lee ¶ 2 (attached as Exhibit A)). Though trained in New York, Ms. Lee only briefly practiced immigration law in Pennsylvania before joining Largan and did not have prior experience as a commercial litigator. Nor did she have any knowledge of or familiarity with arbitration before the ACAB. (*Id.* ¶ 3.) Indeed, whenever Largan is involved in litigation in the United States, it always retains and relies upon the advice and counsel of U.S.-based law firms who specialize in the type of matter being litigated. (*Id.* ¶ 11.) In other words, Fisch's argument that independent representation by counsel automatically satisfies the "fully informed" requirement fails to account for the lawyer's experience and knowledge, including whether the lawyer would have any reason to be familiar with an arbitral forum that exists only in D.C.

Moreover, the fact that Largan's representatives live in Taiwan and are not native English speakers, as well as the idiosyncratic features of ACAB arbitration, are reasons that Fisch should have provided *more* information than the minimal requirements articulation in Opinion 376. ACAB arbitration would impose difficult travel and scheduling requirements on Largan's representatives,[3] and would also deprive them of important evidentiary and procedural safeguards, such as document discovery, daily transcripts, and a written opinion containing a

---

[3] Fisch misconstrues Largan's argument as applying to travel to anywhere in the United States (*see* Opp'n at 17–18), but Largan's argument was specifically—and clearly—directed at an arbitration that would take place in Washington, D.C. (*see* Largan Mot. at 13 ¶ 29 & n.4). Moreover, Fisch's implication that Largan maintains an apartment that its representatives could use during an ACAB arbitration is wrong. Largan has no such apartment in D.C., and its representatives' business-related travel has been largely limited to California. (Ex. A ¶ 10.)

reasoned award—the absence of which effectively eliminates any possibility of appeal.[4]  (Largan Mot. at 13–14, ¶¶ 29–31.)

In other words, the circumstances present here require a broader scope to the information Fisch was required to provide.  None of the circumstances would provide reason to exempt Largan from "The Requirement That The Client Be Fully Informed," even if such an exemption were permitted by the ethics rules (and it is not).

### B. Fully Informing the Client Pursuant to Ethics Opinion 376 *Is* Less Onerous than the Prior Requirements.

Fisch contends that Largan's interpretation of Ethics Opinion 376 would make it more difficult to enforce an arbitration agreement, thereby running counter to the purpose of Opinion 376 to loosen certain previously existing requirements. (Opp'n at 16.)  It is true that the Opinion did loosen the prior requirements, which included advising the client in writing that the ACAB's rules were available through ACAB staff and that ACAB staff would provide counseling regarding arbitration, expressly encouraging the client to seek that counseling and information prior to signing an arbitration agreement. *Id.* at 3.  In addition, as discussed above, clients previously had to obtain the advice of independent counsel.  Opinion 376 explained that these requirements are no longer necessary, and instead the lawyer simply needs to fully inform the client of the scope and effect of the arbitration provision.  Thus, to form an arbitration agreement, attorneys can now provide information orally rather than in writing; they need not

---

[4] Indeed, the absence of document discovery would be quite detrimental to Largan.  When billing in excess of $4.4 million in fixed fees and costs, Fisch only provided monthly invoices, in advance, pursuant to previously agreed schedules—without any explanation of the actual work it provided (or, more accurately, *planned* to provide given that Fisch billed in advance). (*See* Ex. A ¶¶ 20–21.)  Although Fisch says it possesses records of its time spent on the case, it has refused to provide them to Largan. (*See* Letter from J. Saltman, Counsel for Fisch, to C. Kimmett, Counsel for Largan (April 25, 2022) at 1 (attached as Exhibit B).)  Fisch's refusal to provide those records would deprive Largan of evidence for potential counterclaims and offsets necessary for a full and effective defense.

reference the availability of ACAB counseling, let alone encourage a client to seek it; and they need not advise clients to obtain the advice of independent counsel.  *See id.*; *see also id.* at 5 n.4 (expressly observing that "the ethics rules no longer require that the client be advised in writing that the ACAB staff is available to provide counseling").  This loosens the prior, more onerous requirements.  But it nonetheless requires that the client be "fully informed."  Ethics Op. 376 at Part C.

### C. There Is No Federal Policy that Favors Arbitration or Would Obviate the Requirement to Fully Inform the Client.

Fisch contends that a federal policy favoring arbitration supports Fisch's desire to arbitrate its claim for a success bonus.  (Opp'n at 3, 20–21.)  But, as the Supreme Court recently held, there is no such policy:

> Our frequent use of th[e] phrase ["policy favoring arbitration"] . . . "is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." . . . *The federal policy is about treating arbitration contracts like all others, not about fostering arbitration*.

*Morgan v. Sundance, Inc.*, No. 21-328, slip op. at 6 (U.S. May 23, 2022) (citations omitted) (emphasis added) (distinguishing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)—the case cited by Fisch, Opp'n at 3 n.1).  Where, as here, the ethics rules require that a client be fully informed in order to agree to arbitration, this requirement cannot be ignored because of some policy favoring arbitration that does not exist.

### D. Fisch Did Not Fully Inform Largan, and Thus No Agreement to Arbitrate Was Formed.

Fisch engaged in *no discussion* with Largan about the ACAB arbitration provision.  Throughout its Opposition, Fisch essentially admits this.  It sets forth various legal arguments that try to minimize or eliminate its duty to fully inform Largan of the arbitration provision, but

8

nowhere states or implies that it met that requirement. Even Attorney Sigler's declaration, despite attesting to many aspects of Fisch's representation, mentions nothing in the way of a discussion about the arbitration provision, let alone fully informing Largan of its scope and effect. (*See generally* Opp'n, Decl. of R. William Sigler ("Sigler Decl.").) Instead, the Opposition and declaration point repeatedly to the absence of any questions from Largan's in-house counsel, Ms. Lee. (*See generally* Opp'n; *cf.* Sigler Decl. ¶¶ 3, 5, 9.) But the ethics rules have never placed the burden on the client—through in-house counsel or otherwise—to inform itself about an arbitration provision. The burden is, as it always has been, on the lawyer to inform the client. Fisch, however, provided no information, but instead presented the ACAB arbitration provision as part of five paragraphs of "portions of the standard agreement," and did so only after the parties' substantive negotiations over the terms of the engagement had largely concluded. (*See* Ex. A ¶¶ 6–9.)

Separate and apart from whether an agreement to arbitrate was formed at all, Largan did not agree to arbitrate this particular dispute because, per the plain language of the Engagement Letter, any dispute over success bonuses is subject to mediation in California rather than arbitration at the ACAB. (Largan Mot. at 15–16 ¶¶ 34–35.) Fisch contends that, given the presumption in favor of arbitration, "any ambiguity" in an arbitration provision necessitates an "interpretation that covers the dispute," and because, in its view, ambiguity exists, the dispute is subject to arbitration. (Opp'n at 19 (quoting *Johansson v. Cent. Properties, LLC*, 320 F.Supp.3d 218, 221–22 (D.D.C. 2018)); *Woodroof v. Cunningham*, 147 A.3d 777, 787–88 (D.C. 2018)).

But no such ambiguity exists. The Engagement Letter specifically defined Fisch's "compensation" as being comprised of two separate and distinct parts: "fixed fees" for the work Fisch anticipated its attorneys would perform, and "success bonuses." (*See* Largan Mot., Ex. 1 at

9

1.) The engagement defined "fixed fees" to "include all *attorneys' fees* incurred by the firm, and certain expenses incurred by the firm." (*Id.* at 3 (emphasis added).) "Success bonuses" were defined in a separate paragraph that involved specific calculations based on multiple factors, including the timing and nature of any recovery. (*Id.* at 3–4.) The success bonuses were also subject to specific limitations and requirements. For example, payments received by Largan as a result of trade secret litigation against AOET in Taiwan were expressly excluded from that calculation.[5] (Largan Mot., Ex. 1 at 4; *see also* Ex. A ¶ 13.)

Importantly, the success bonus was subject to its own specific dispute resolution provision, which stated:

> The firm and the Client agree to engage in good faith discussions to resolve any dispute over the amount of any success bonus due to the firm, and, if such discussions don't resolve that dispute, then to mediate in California in a further attempt to resolve it.

(Largan Mot., Ex. 1 at 4.) By contrast, the arbitration provision specially relates to "*the firm's fees*." (*Id.* at 5 (emphasis added).) Thus, according to the plain language of the Engagement Letter, only a dispute over the fixed fees—not a dispute over success bonuses—is covered by the arbitration provision.

In any case, Fisch's argument here collapses into the main issue in this case—i.e., whether an agreement to arbitrate was formed—because the presumption in favor of interpreting

---

[5] This provision of the Engagement Letter is pertinent to the parties' dispute. Largan filed suit against AOET in Taiwan in 2012 and 2013, and in December 2017, obtained judgment for approximately $50 million, including attorneys' fees and the transfer of two patents from AOET—all years before it engaged Fisch to handle separate litigation in the U.S. *See* Ex. A ¶ 12; Taipei Times, *Largan Settles IP Suit Against Ability*, at 2 (Mar. 6, 2021) (attached as Exhibit C); IP Wire, *Largan Precision Received Verdict in Ability Opto-Electronics Technology Co Ltd Patent Case*, (Dec. 10, 2017) (attached as Exhibit D). On January 28, 2021, the judgment was upheld by the appellate court, and Largan obtained an order for the provisional seizure of AOET's property. Ex. A ¶ 14; Ex. C at 2. Soon thereafter, AOET and Largan entered into the settlement. Ex. A ¶ 15.

a contract provision to require arbitration is only triggered if a valid arbitration agreement exists. As Fisch's own cited case explains:

> The party seeking to compel arbitration first bears the burden of demonstrating that a valid agreement to arbitrate exists. *If such an agreement exists*, the Court must then determine "whether the arbitration clause is susceptible of an interpretation that covers the dispute." In other words, *if there is a valid arbitration agreement, "a presumption in favor of arbitration attaches*."

*Johansson*, 320 F.Supp.3d at 221–22 (emphases added) (citations omitted) (quoting *Signature Tech. Sols. v. Incapsulate, LLC*, 58 F.Supp.3d 72, 83 (D.D.C. 2014)) and *Woodroof*, 147 A.3d at 787–88). Here, a valid agreement to arbitrate does not exist because Fisch did not fully inform Largan of the scope and effect of the arbitration provision, and, in any case, that provision does not encompass the claim Fisch has now brought.[6]

## II. THE QUESTION OF ARBITRABILITY IS FOR THIS COURT, NOT THE ACAB, TO DECIDE.

The second issue presently before this Court is who decides the first issue: a court or the arbitral body invoked by the arbitration provision. As discussed in Largan's Motion, controlling precedent establishes that the Court must decide this question. (Largan Mot. at 7–9 ¶¶ 16–21.) Under D.C. law, "[t]he court shall decide whether an agreement to arbitrate exists." D.C. Code § 16-4406(b). This is "because the arbitrator's authority derives from the consent of the parties." *Univ. of D.C. Fac. Ass'n v. Bd. of Trustees of Univ. of D.C.*, 257 A.3d 1026, 1031–32 (D.C. 2021). Supreme Court precedent establishes the same. Because an arbitrator lacks any authority

---

[6] Although the Court need not reach this latter issue, it is within the Court's, rather than the ACAB's, authority. D.C. Code § 16-4406(b) ("The court shall decide whether an agreement to arbitrate exists or *a controversy is subject to an agreement to arbitrate*.") (emphasis added); *see also, e.g.*, *Univ. of D.C. Fac. Ass'n v. Bd. of Trustees of Univ. of D.C.*, 257 A.3d 1026, 1032 (D.C. 2021). And if the Court *were* to reach this question, the outcome would be the same: This "success bonus" dispute is not arbitrable. The arbitration provision applies to attorney fees, while success bonuses are covered by a different contract provision that requires the parties to engage in good faith discussions and then mediation, with no mention of arbitration.

11

unless the parties have consented to it, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up); *accord Masurovsky v. Green*, 687 A.2d 198, 200 (D.C. 1996).[7] Here, the text of the arbitration provision says nothing about submitting the question of arbitrability to the ACAB, let alone does it provide "clear and unmistakable evidence" of an agreement to arbitrate arbitrability. Thus, the Court must decide the first issue; the ACAB cannot.

### A. Where Informed Consent (or the Like) Is Required, an Agreement Is Not Formed Merely Through Execution.

Fisch contends that the mere existence of a signed contract "indicates 'mutuality of assent'" and creates an agreement. (Opp'n at 11.) This argument ignores the import of the D.C. Rules of Professional Conduct and their requirement that a lawyer "fully inform" a client of the scope of effect of an arbitration provision. The cases Fisch cites, and their underlying principle, are therefore inapposite. First, none of the cases on which Fisch relies involved an agreement between a lawyer and a client. *See Emeronye v. CACI Int'l, Inc.*, 141 F.Supp.2d 82, 84 (D.D.C. 2001) (employment contract); *Signature Tech. Sols.*, 58 F.Supp.3d at 75 (subcontractor agreement for services); *Davis v. Winfield*, 664 A.2d 836, 837 (D.C. 1995) (residential lease). Second, unlike here, the applicable law in those cases did not require informed consent (or the like) for a contract to be formed. Instead, the issue was simply whether the parties intended to be

---

[7] Fisch attempts to distinguish *First Options* and *Masurovsky* by alleging that those cases "decided whether an executed agreement to arbitrate existed." (Opp'n at 13.) But Fisch's argument does not render these cases inapposite. First, these cases articulate the proposition that courts must decide whether an agreement to arbitrate exists. Second, nothing in these opinions limits that proposition to executed agreements.

bound by the contract under ordinary contract principles. *See Emeronye*, 141 F.Supp.2d at 85; *Signature Tech. Sols.*, 58 F.Supp.3d at 81; *Davis*, 664 A.2d at 838.[8]

### B. This Dispute Concerns Whether an Agreement to Arbitrate Was Formed, Not Whether Fisch Fulfilled a Condition Precedent.

In order to escape *First Options*, D.C. Code § 16-4406(b), and the other law supporting Largan's position, Fisch contends that the issue is whether Fisch fulfilled a "condition precedent," which it argues is a question for the ACAB, not whether an agreement to arbitrate was formed, which is a question for the Court. (Opp'n at 11–13; *id.* at 12–13 ("Whether Fisch Sigler provided the requisite level of information under ACAB Rule 8 and the Ethics Opinions is a condition precedent . . . .").) Fisch's contention is wrong.

The requirement to fully inform a client of the scope and effect of an arbitration provision is a requirement for the formation of an agreement to arbitrate. *See supra* pp. 3–4. If the requisite information is not provided, no agreement is formed. *See id.* Moreover, the ACAB's incorporation of this requirement in its Rules (*see* ACAB Rule 8(b)(iii)) does not magically convert it into a condition precedent. Conditions precedent are requirements *within valid agreements* that must be fulfilled before the duty to perform is triggered. *See, e.g.*, *Wash. Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 549 (D.C. 2000); *Condition Precedent*, Black's Law Dictionary (11th ed. 2019) ("An act or event, other than a lapse of time, that must exist or occur before a duty to perform *something promised* arises.") (emphasis added). Fully informing the client is

---

[8] In *Emeronye*, the plaintiff challenged the validity of an arbitration provision on the grounds that the employment contract was adhesive, arguing that nobody explained the contents of the contract or "pointed out the arbitration clause." *Emeronye*, 141 F.Supp.2d at 85. But the law does not impose a requirement an employer to take such action. *See id.* at 86. The law does, however, require an attorney to "fully inform" a client about an arbitration provision. In *Signature Technology*, the petitioner merely claimed that the dispute was not subject to arbitration because the contract was not signed. *Signature Tech. Sols.*, 58 F.Supp.3d at 81. The court held that, regardless of execution, the petitioner's conduct manifested assent. *Id.* No arbitration provision was at issue in *Davis*.

13

necessary to form a valid agreement; it is not a condition that must be fulfilled before performance is required and whose existence is to be determined when a party adjudicates its claims.

Here, a valid agreement was not formed because Fisch failed to fully inform Largan and obtain consent to arbitrate. Moreover, unlike, for example, the contractual requirement of good faith negotiations prior to mediation, the lawyer's duty to fully inform the client is not a term of the contract, but a requirement that must be met for a contract to exist at all. There is no condition precedent at issue because there is no agreement.[9]

### III.   FISCH CAN SUE LARGAN IN FEDERAL COURT IN CALIFORNIA.

Finally, Fisch contends that Largan "will resist jurisdiction in any United States forum" and that the ACAB is the *only* forum in the entire United States that could hear its success bonus dispute. (Opp'n at 17.) This is a classic straw man argument of Fisch's own creation. Largan has never argued or implied that no U.S. court can obtain jurisdiction over it.

As discussed above, the parties agreed to mediate any dispute over success bonuses in California. If this dispute cannot be resolved through mediation, Fisch could bring suit in the

---

[9] Again, the cases Fisch cites establish nothing to the contrary. In each case, the parties did not dispute the formation of an agreement to arbitrate; instead, the court was tasked with deciding whether it or the arbitrator should decide a different question. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81, 82–83 (2002) (holding that the interpretation and application of the statute of limitations in the arbitral body's procedural rules was for the arbitrator, not a court); *Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 863, 865 (D.C. 2005) (holding that whether one of the parties had waived its right to arbitration by participating in a derivative litigation was a question for the arbitrator); *Menna v. Plymouth Rock Assur. Corp.*, 987 A.2d 458, 464, 465–66 (D.C. 2010) (holding that a party's attempt to withdraw from the arbitration agreement did not negate the existence of a valid agreement and that issues like timeliness and waiver were reserved for the arbitrator); *Univ. of D.C. Fac. Ass'n*, 257 A.3d at 1032(holding that whether the particular dispute fell within the scope of the unchallenged, valid arbitration agreement was a question for the court). Contrary to Fisch's assertion, this latter case did not address a condition precedent. The opinion merely cites the language Fisch relies on as a general proposition that was ultimately inapplicable in that case. *See Univ. of D.C. Fac. Ass'n,* 257 A.3d at 1032.

federal courts in California. When litigating in the United States to protect its patents, Largan has always filed suit in the Northern District of California—except for the single instance when, on Fisch's advice, it filed in the Eastern District of Texas. But even then, the matter was ultimately transferred to the Northern District of California. (*See* Ex. A ¶ 10.) In 2019, Largan's then-counsel, Ms. Lee, met with Fisch attorneys Bill Sigler and Ken Fung in California prior to Largan's engagement of Fisch. (*Id.* ¶ 5.) Moreover, not only would California be a much more convenient venue for Largan, whose representatives that would need to attend hearings are based in Taiwan, it is also convenient to Fisch, as California is one of the two locations in the U.S. where Fisch maintains an office. (*See id.* ¶ 5.) California provides a convenient and logical venue for any litigation necessary to resolve a dispute over the success bonus, and Fisch can file suit in the Northern District of California should mediation prove unsuccessful.

Fisch also argues that Largan's prior refusal to mediate the success bonus dispute in California somehow permits Fisch to proceed before the ACAB in Washington, D.C. Largan did not agree to Fisch's prior request for mediation because Largan did not believe that Fisch had engaged in the "good faith discussions" that are a condition precedent to mediating. Specifically, Fisch initially claimed it was owed a success bonus of approximately $1.9 million. (*See* Decl. of Wei-ju (Leon) Chen ¶ 3 (attached as Exhibit E).) When another Fisch attorney took over discussions, however, Fisch *increased* its demand nearly three-fold, to approximately $5.65 million. (*Id.* ¶ 4.)

Despite Fisch's failure to engage in good faith negotiations, Largan is prepared to mediate the dispute even if no good faith discussions are forthcoming. If such mediation fails to resolve the dispute, however, Largan does not consent—and has never agreed—to resolve a

15

dispute over the success bonus in an ACAB (or any other) arbitration.  Fisch is not, however, left without a forum to pursue its claims, as Fisch could file suit in the federal courts in California.

## CONCLUSION

For the foregoing reasons, Largan respectfully requests that this Court provide the relief sought in Largan's Motion to Stay Arbitration.


Date:  June 2, 2022                                    Respectfully submitted,


                                                       /s/ Charles T. Kimmett                          

                                                       Charles T. Kimmett, D.C. Bar No. 463920
                                                       Thomas B. Mason, D.C. Bar No. 413345
                                                       HARRIS, WILTSHIRE & GRANNIS LLP
                                                       1919 M Street, N.W., Eighth Floor
                                                       Washington, D.C. 20036
                                                       (202) 730-1300
                                                       ckimmett@hwglaw.com
                                                       tmason@hwglaw.com

                                                       *Counsel for Movant*