UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARGAN PRECISION CO., LTD.,**<br><br>Movant,<br><br>v.<br><br>**FISCH SIGLER LLP**,<br><br>Respondent. | Case No. 1:22-mc-00049 (TNM) |

## MEMORANDUM OPINION

Largan Precision Co., Ltd., moves to stay arbitration over a bonus payment to its former counsel, Fisch Sigler LLP. Largan, a Taiwanese company, hired Fisch Sigler to file a patent infringement case in the United States. The parties agreed to arbitrate any future disputes over fees. When Largan won an award in parallel Taiwanese litigation, Fisch Sigler sought a portion of the award as a contractual bonus payment. Largan refused because Fisch Sigler did not participate in the Taiwanese litigation. After months of unsuccessful negotiation, Fisch Sigler tried to force Largan to arbitrate the issue in Washington, D.C. Largan says the agreement to arbitrate "fees" does not cover a dispute about bonus payments. Fisch Sigler disagrees and also argues that this Court is not the proper forum to decide the dispute over arbitrability.

Because federal courts determine whether parties have agreed to arbitrate and the scope of that agreement, this Court is the proper forum. And because the contract carves out bonus payments from the agreement to arbitrate, the Court will stay the arbitration.

## I.

Largan is a Taiwan-headquartered, publicly traded company that manufactures camera lenses. Mot. to Stay ¶ 1 (Mot.), ECF No. 1; Mem. in Opp'n at 8 (Opp'n), ECF No. 9.[1] Largan's customers include the world's largest technology companies, such as Apple, Google, Microsoft, and Samsung. Opp'n at 8. Based in the District, Fisch Sigler is a nationally recognized law firm that specializes in patent litigation. *Id.* at 7.

In 2013, Largan filed a trade secrets lawsuit in Taiwan against another Taiwanese company, Ability Opto-Electronics Technology Co., Ltd. (AOET). Mot. ¶ 4. Six years later, with the Taiwanese lawsuit still ongoing, Largan hired Fisch Sigler to file a patent infringement lawsuit against AOET in the United States. *Id.* ¶ 5; Opp'n at 9. The parties memorialized the terms of the representation in a contract. The contract includes several provisions at issue here.

*First*, it defines both "fixed fees" and "success bonus." "Fixed fees" include "all attorney's fees . . . and certain expenses incurred by the firm" and excludes certain fees not disputed here. *See* Largan Ex. 1 at 4 (Contract), ECF No. 1-2. The "success bonus" for Fisch Sigler is either 25% of "case profit" if the case concludes before a so-called "claim construction order" (a type of order specific to patent disputes) or 50% of case profit if the case concludes after that order. *Id.* at 4–5.

*Second*, the contract contains both a mediation and an arbitration provision. If the parties dispute the amount of the success bonus, the contract directs the parties to "mediate in California." *Id.* at 5. If the parties have a dispute over "fees"—an undefined term—the parties

---

[1] All page numbers refer to the pagination generated by the Court's CM/ECF electronic filing system.

"agree to mandatory arbitration before the Washington, D.C. Bar Attorney/Client Arbitration Board" (ACAB). *Id.* at 6.

In early 2021, Largan won a judgment against AOET in the Taiwanese litigation. Mot. ¶ 9; Opp'n at 11. Largan and AOET then negotiated a settlement that resolved both the Taiwanese and U.S. lawsuits. Mot. ¶ 9. Largan and Fisch Sigler began to discuss the success bonus, but the parties could not agree on the amount. *Id.* ¶¶ 10–11; Opp'n at 14. Fisch Sigler says it asked Largan six times to mediate, and Largan refused each time. Opp'n at 14. Largan responds that the contract only requires it to mediate after good-faith discussions, and that Fisch Sigler never engaged in good-faith discussions. Largan Reply to Fisch Sigler's Opp'n at 18 (Reply), ECF No. 11. As proof, it submits a declaration from in-house counsel at Largan who says that Fisch Sigler at first asked for a $1.9 million success bonus. Decl. of Wei-Ju Chen Ex. E ¶ 3, ECF No. 11-1. But after a new attorney took over Fisch Sigler's negotiations, it increased its demand to $5.65 million. *Id.* ¶ 4. To Largan, a request for triple the previous amount did not constitute good faith, so it refused to mediate. *See id.* ¶ 5; Reply at 18.

Fisch Sigler filed a complaint with ACAB seeking to arbitrate the success bonus plus attorneys' fees and expenses. Mot. ¶ 10; Opp'n at 14. Largan then filed this motion to stay arbitration. Fisch Sigler opposed the motion, and Largan replied. The motion is now ripe.

## II.

The parties disagree on three issues. First, they dispute whether ACAB or the Court is the proper forum for this dispute. Second, they disagree about whether Largan provided informed consent to arbitrate the success bonus as required by ACAB rules. And third, they disagree about whether the arbitration clause covers the success bonus.

The Court need only address the first and third arguments. Under District law and Supreme Court precedent, a court decides whether parties agreed to arbitrate a particular issue.[2] So the Court is the proper forum for this dispute. Because the Court finds that the arbitration clause does not cover disputes over a success bonus, it need not decide whether Largan provided its informed consent.

### A.

Consider first the parties' threshold dispute about whether this matter is properly before the Court. The answer to that question depends on how one frames the issue. Largan says the dispute is about whether the parties agreed to arbitrate disagreements about the success bonus. *See* Mot. ¶¶ 16–21. Framed this way, the dispute is over "the *existence* or formation of a valid agreement to arbitrate—i.e., arbitrability." *Id.* ¶ 16.

If Largan's framing is correct, the Court should adjudicate because courts resolve disagreements about arbitrability. *See* D.C. Code § 16-4406(b) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995) (holding that because a party did not "clearly agree to submit the question of arbitrability to arbitration," the dispute over arbitrability "was subject to independent review by the courts"). To adjudicate a disagreement about arbitrability, courts decide whether an agreement to arbitrate *exists* and the *scope* of that agreement. *See* D.C. Code § 16-4406(b); *see also Masurovsky v. Green*, 687 A.2d 198, 204 (D.C. 1996) ("[C]ourts, not arbitrators, are to determine *whether the parties have agreed to*

---

[2] Whether the Court is the proper forum for this dispute is separate from the issue of whether the Court has subject matter jurisdiction. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Fisch Sigler has its principal place of business in the District, Largan is a Taiwanese corporation, and the amount in controversy exceeds $75,000. *See* Mot. ¶ 3.

*arbitrate a particular matter*, unless the parties themselves have agreed to submit the arbitrability question itself to arbitration.") (emphasis added).

Fisch Sigler responds that "the [Contract] itself shows that an agreement to arbitrate exists—indeed, it contains the arbitration provision." Opp'n at 15. Thus, there can be no disagreement about the existence of an agreement to arbitrate. Instead, Fisch Sigler contends, the only thing at issue is whether it "complied with" ACAB's internal rules. *Id*. Recall that the parties dispute whether Fisch Sigler obtained Largan's informed consent. ACAB Rule 8(b)(iii) requires a client to "have been adequately informed of the scope and effect of a mandatory arbitration provision, consistent with D.C. Bar Legal Ethics Committee Opinion 376." That rules dispute, according to Fisch Sigler, is not about the *existence* of an agreement to arbitrate. It is a dispute about an arbitral body's rules. And under Supreme Court precedent, the arbitrator adjudicates these disputes. *See Howsam v. Dean Witter Reynods, Inc.* 537 U.S. 79, 84 (2002). Accepting Fisch Sigler's framing, then, means ACAB is the proper forum.

The Court agrees with Largan. Fisch Sigler assumes that because the contract includes an arbitration provision, the parties have agreed to arbitrate. But the existence of an arbitration contract says nothing about its scope. And the scope is what Largan disputes.[3] In other words, Largan challenges the existence of an agreement *to arbitrate the success bonus*. That disagreement goes to the Court unless "clear[]" and "unmistakable[]" evidence suggests the parties' arbitration clause covers the disputed issue. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise,

---

[3] Largan also disputes the validity of the *entire* arbitration provision because it says it never gave its informed consent to arbitrate. But that turns on the issue of informed consent, which the Court need not address to resolve this motion. *See supra* Section II.

the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

The contract does not "clearly and unmistakably" provide that the parties agreed to arbitrate disagreements about the success bonus. The arbitration clause applies to "fees," an undefined term. *See* Contract at 6. A separate mediation provision covers disputes about the success bonus. *Id.* at 5. The contract does not say whether these provisions are mutually exclusive. Submitting that question to ACAB would improperly allow it to determine its own jurisdiction. *See Grad v. Wetherholt Galleries*, 660 A.2d 903, 908 (D.C. 1995) ("To require any degree of judicial deference to an arbitrator's decision regarding arbitrability where a proper objection to the arbitrator's authority has been lodged would vitiate the consent basis of statutory arbitration by permitting an arbitrator to clothe herself with actual authority, based on the agreement of the one party asserting the claim.").

Thus, the Court is the proper forum to resolve the dispute.

### B.

Consider next whether the parties agreed to arbitrate disputes about the success bonus. When interpreting a contract, the Court bears in mind several principles. "This jurisdiction follows the 'objective' law of contracts." *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C. 2003). So "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking[.]" *Id.* (cleaned up). Courts give "the language used its plain meaning," *Tillery v. Dist. of Colum. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006), and "will not torture words to import ambiguity where" there is none. *Bragdon v. Twenty–Five Twelve Assocs. Ltd.*

6

*P'ship*, 856 A.2d 1165, 1170 (D.C. 2004) (cleaned up). More, "contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Steele Founds., Inc. v. Clark Constr. Grp.*, 937 A.2d 148, 153 (D.C. 2007) (cleaned up).

The crux of Fisch Sigler's argument is that the parties wrote the arbitration provision broadly. Recall that the contract defines two sets of fees: "fixed fees" and the "success bonus." Contract at 3–5. In contrast, the term "fees" is undefined. Fisch Sigler argues that though the term "fixed fees" is narrow, the parties wanted the arbitration provision to apply to fees "generally"—*including* the success bonus. Opp'n at 22–23. As evidence, the contract uses the term "fixed fees" 23 times. *Id.* at 23. But it uses the term "fees" sparingly. And where it does use that term, says Fisch Sigler, the contract uses it to cover "fixed fees" and the "success bonus." *See id.*

The problem with this argument is that several times the contract uses the term "fees" in a way that precludes it from covering the success bonus. *First*, the contract uses "fees" and "fixed fees" interchangeably. On its first page, the contract says that "the *fees outlined below* shall increase by 25%" if another defendant is added. Contract at 2 (emphasis added). The contract then gives a list of *fixed* fees. *Id.* at 2–3. A page later, the contract says that for "*fixed fees*, the firm will issue an invoice for each such *fee* at the beginning of the month (e.g., the $87,000 *fixed fee* invoice for September 2019 would be issued on September 1, 2019)." *Id.* at 4 (emphasis added). True, just because the contract refers to "fixed fees" as "fees" does not mean "fees" excludes the success bonus. But it is instructive that the contract uses the term "fees" to refer to "fixed fees" but never refers to the "success bonus" as a "fee."

*Second*, page three of the contract says that payment terms "apply to all amounts due including *fees*, non-covered expenses, and *success bonuses*." Contract at 4 (emphasis added).

And page five of the contract reads: "Notwithstanding any such termination [of the firm's representation], the Client remains liable to pay all *fees*, disbursements, *success bonuses*, and related charges incurred or earned under the agreement." *Id.* at 6 (emphasis added). If "fees" included a "success bonus," there would be no need to include them both in the same sentence. Put differently, Fisch Sigler's approach would render the phrase "success bonuses" in these instances meaningless. The Court is loath to accept this interpretation because it contradicts the District's rules for interpreting contracts. *See Dist. of Colum. v. Young*, 39 A.3d 36, 40 (D.C. 2012) ("[W]e must strive to give reasonable effect to all [a contract's] parts and eschew an interpretation that would render part of it meaningless or incompatible[.]") (cleaned up); *see also* Antonin Scalia & Bryan J. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) ("Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant.").

*Third*, the contract provides for a separate dispute resolution mechanism for the success bonus and *only* the success bonus. The parties agreed to mediate disputes about the success bonus in California. Contract at 5. This is different from how the parties agreed to resolve disputes about fees both in form—mediation versus arbitration—and in location—California versus the District. Fisch Sigler counters that mediation and arbitration are not mutually exclusive. *See* Opp'n at 24. The way to harmonize these two dispute resolution mechanisms, it says, is to understand that the contract "contemplates that the parties will mediate [a dispute over the success bonus] first and if it's unsuccessful, initiate arbitration at the ACAB." *Id.* But nowhere does the contract set forth mediation and arbitration as successive dispute resolution mechanisms.

Fisch Sigler has one more argument. It says that if the Court finds the contract ambiguous, it should presume in favor of applying arbitration. *Id.* at 23; *see also Woodroof v. Cunningham*, 147 A.3d 777, 788 (D.C. 2016) ("If [a contractual] clause possesses a certain amount of ambiguity, a presumption . . . applies to construe any ambiguity in favor of arbitration.") (cleaned up).

There are two reasons not to apply the presumption in favor of arbitrability here. For starters, Fisch Sigler overemphasizes the force of the presumption. The Supreme Court recently highlighted the presumption's limited reach when it clarified that the "policy favoring arbitration . . . is about *treating arbitration contracts like all others, not about fostering arbitration*." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (emphasis added). This "policy" exists not to "favor arbitration over litigation," *id.*, but to counter "the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts," *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 302 (2010) (cleaned up). And the Supreme Court has "never held that this policy overrides the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit." *Id.* (cleaned up). *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (stating that the federal "proarbitration policy does not operate without regard to the wishes of the contracting parties").

Consistent with these statements, the Supreme Court has laid out a two-pronged approach to determine whether to apply the presumption:

> [Courts] discharge [their] duty [to determine whether parties agreed to arbitrate an issue] by: (1) applying the presumption of arbitrability *only* where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration *only* where the presumption is not rebutted.

9

*Granite Rock Co.*, 561 U.S. at 301 (emphasis added).

Fisch Sigler fails to satisfy this test.  As we have seen, the contract is not ambiguous about whether the arbitration clause covers a "success bonus":  (1) The contract uses the term "fees" and "success bonus" in the same sentence; (2) the contract uses the term "fees" interchangeably with "fixed fees"; and (3) the contract provides a separate dispute resolution mechanism in a separate forum for the success bonus.  Thus, the presumption does not apply.  In any event, if the contract was ambiguous, the ambiguity should be construed *against* the contract's author—Fisch Sigler—not in its favor.  *See Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) ("[A]ny ambiguity as to the contract's meaning will be construed strongly against the drafter."); *Aziken v. Dist. of Colum.*, 70 A.3d 213, 223 n.13 (D.C. 2013) (same).

Fisch Sigler contends that if it cannot bring its claim before ACAB, it is without a forum to seek relief.  Opp'n at 21.  Not so.  As even Largan acknowledges, Fisch Sigler is free to file a breach of contract claim in California contending that Largan has failed to mediate as required by the contract.  *See* Reply at 17–19.  But what Fisch Sigler may not do is force Largan to arbitrate a dispute that it did not agree to arbitrate.

## III.

For all these reasons, the Court will grant Largan's motion to stay the arbitration.  A separate order will issue.

Dated: June 30, 2022                                                                     TREVOR N. McFADDEN, U.S.D.J.

10